[No. 66956-7-I.   Division One.   July 2, 2012.]

ANDREW FIORE, *Respondent*, v. PPG INDUSTRIES, INC.,
*Appellant*.

326

328

*Douglas E. Smith* (of *Littler Mendelson*) (*Robert W. Pritchard* and *Kerry Notestine*, of counsel), for appellant.

330

*Lisa A. Burke, Donald W. Heyrich,* and *Patrick L. McGuigan* (of *HKM Employment Attorneys PLLC*) and *Kenneth W. Masters* (of *Masters Law Group PLLC*), for respondent.

¶1 DWYER, J. — Where an employee's duties consist principally of manual labor and individual retail sales, the employee's primary duty is not "promoting sales" pursuant to our state's minimum wage laws. Relatedly, such duties do not constitute administrative operations exempting the employee from the overtime wage protections of the Washington Minimum Wage Act[1] (MWA or Act). Here, PPG Industries Inc. classified its employee, Andrew Fiore, as an administrative employee exempt from the requirements of the MWA and, accordingly, did not pay to Fiore overtime wages as mandated by the Act. Because PPG cannot meet its burden of demonstrating that Fiore was an administrative employee pursuant to the MWA, the trial court properly granted Fiore's summary judgment motion seeking to recover wrongfully withheld overtime wages.

¶2 However, in granting to Fiore an award of attorney fees, the trial court improperly granted a .25 multiplier on the fee award. Because Fiore sought a trial de novo in the superior court following an unfavorable arbitration decision, he faced the risk of being required to pay PPG's attorney fees if he did not improve his position on the trial de novo. This risk, a public policy preference imposed by our legislature, does not provide a proper basis for the award of

[1] Ch. 49.46 RCW.

a multiplier. Moreover, the lodestar amount awarded here fully compensates Fiore's counsel for the time-consuming nature of the litigation. Thus, although we affirm in all other respects, we reverse the trial court's utilization of a multiplier in calculating Fiore's attorney fee award.

I

¶3 This overtime wage dispute arose from PPG's classification of certain of its employees as exempt from the protections of our state's minimum wage laws. These employees, who hold the position of "Territory Manager," are assigned responsibility for certain Lowe's "home improvement" retail stores within a designated geographical region. Lowe's stores sell Olympic brand paints and stains, which are PPG products, to their customers. Territory Managers are members of PPG's "Lowe's National Olympic Field Sales Team."

¶4 Andrew Fiore was employed by PPG as a Territory Manager for approximately 40 weeks from February until November 2009. Fiore was assigned to the "Northwest Region," where he was responsible for servicing nine Lowe's retail stores in Washington and two such stores in Oregon. PPG required him to service two stores each day, for four hours each, and to visit each store at least three times per month. In the course of his store visits, Fiore spent many hours driving to, from, and between his 11 assigned stores. However, he was not paid for his driving time. Following his store visits, Fiore was also required to review and respond to e-mail messages and voice mail directives from management and to submit various reports to his regional manager. PPG did not compensate Fiore for the time he spent engaged in these activities. Fiore was compensated on a salary basis.

¶5 PPG terminated Fiore's employment.

¶6 Fiore thereafter filed an overtime wage claim against PPG, contending that PPG had failed to pay him overtime

wages in violation of the MWA. Although Fiore's complaint stated the amount in controversy to be less than $50,000, PPG removed the case to federal court, asserting that the amount in controversy should include potential attorney fees of nearly $400,000. The federal court rejected PPG's argument and remanded the case to the superior court. PPG then filed a motion to transfer the case to mandatory arbitration. Following an arbitration ruling favorable to PPG, Fiore sought a trial de novo in the superior court.

¶7 The parties filed cross motions for summary judgment. Following a subsequent hearing, the superior court granted in part Fiore's motion for summary judgment, ruling that PPG could not sustain its burden of demonstrating that Fiore was an administrative—and, thus, exempt—employee pursuant to the MWA. The superior court additionally ruled that the fluctuating workweek method of calculating damages was not applicable. The court determined, however, that material issues of fact remained with regard to whether PPG willfully withheld the wages owed to Fiore and the number of overtime hours that Fiore had worked.

¶8 The parties thereafter jointly requested that the superior court determine whether PPG had willfully withheld the wages owed to Fiore and, thus, whether Fiore was entitled to double damages for his overtime claim. PPG asserted that a "bona fide" dispute existed with regard to whether it owed Fiore overtime wages and, thus, that it could not be found to have willfully withheld such wages. The superior court rejected PPG's argument. The parties thereafter stipulated to damages in the amount of $12,203.10. Due to its finding of willfulness, the superior court entered judgment against PPG in the principal amount of $24,406.20.

¶9 Pursuant to statutory authorization, Fiore requested an award of attorney fees and costs, including a .50 multiplier, which, he asserted, was warranted based upon the risk that he had faced in seeking a trial de novo. The

superior court found that Fiore was "in the unfortunate situation of being the 'test case'" due to similar lawsuits filed against PPG throughout the country. The court additionally found that PPG engaged in an "aggressive litigation strategy" and that Fiore's counsel, who were hired on a contingency fee basis, undertook an "extraordinary risk" that they might receive no fees at all. The superior court granted to Fiore an award of attorney fees and costs in the amount of $596,559.47, including a .25 multiplier.

¶10 PPG appeals.

## II

¶11 PPG first contends that Fiore was an administrative employee pursuant to the MWA and, thus, that he was not entitled to the overtime wage protections of the Act. In so doing, PPG attempts to characterize Fiore's primary duty as "promoting sales," which qualifies as an administrative operation exempt from the requirements of the MWA. But this is a mischaracterization of the work that Fiore performed, which principally entailed manual labor and individual retail sales. Because such duties do not constitute administrative operations, Fiore was not exempt from the protections of our state's overtime wage law.

¶12 We review de novo both questions of statutory interpretation and orders granting summary judgment. *Cerrillo v. Esparza*, 158 Wn.2d 194, 199, 142 P.3d 155 (2006). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Cerrillo*, 158 Wn.2d at 200. Here, the superior court determined on summary judgment that Fiore was not an exempt administrative employee pursuant to RCW 49.46.010(5)(c) and, thus, that PPG violated the MWA by failing to pay Fiore overtime wages. Thus, we review the superior court's order de novo. *See Cerrillo*, 158 Wn.2d at 199.

¶13 The MWA requires employers, absent certain exceptions, to pay to their employees overtime wages at a rate of

one and one-half times the employees' regular rate of pay for hours worked in excess of 40 hours per week. RCW 49.46.130(1). An employer can assert that its employee falls into one of these exemption categories and, therefore, is not entitled to overtime wages; however, the employer bears the burden of proving the applicability of such an exemption. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000). "Exemptions from remedial legislation, such as the MWA and FLSA [Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219], are narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." *Drinkwitz*, 140 Wn.2d at 301.

¶14 The MWA statutorily exempts from its overtime wage protections employees who work in a "bona fide . . . administrative . . . capacity." RCW 49.46.010(3)(c). "[A] multifactored definition of the duties of exempt administrative employees" is set forth in regulations interpreting the Act. *Mitchell v. PEMCO Mut. Ins. Co.*, 134 Wn. App. 723, 731-32, 142 P.3d 623 (2006); *see also* WAC 296-128-520. As relevant here, an employee is administratively exempt where (1) he or she is compensated on a salary basis at a rate of not less than $250 per week, (2) his or her "primary duty consists of the performance of office or nonmanual work directly related to management policies or general business operations of his [or her] employer or his [or her] employer's customers," and (3) the employee's work "includes work requiring the exercise of discretion and independent judgment." WAC 296-128-520(4)(b);[2] *see also Mitchell*, 134 Wn. App. at 731-32. The parties do not dispute

---

[2] WAC 296-128-520(4)(b) provides that

an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of office or nonmanual work directly related to management policies or general business operations of his [or her] employer or his [or her] employer's customers; which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section.

that the first requirement is met here. Thus, in order to demonstrate that it properly classified Fiore as an administrative employee exempt from MWA protections, PPG must show that Fiore's position as a Territory Manager meets the latter two requirements.

¶15 First, in order to demonstrate that Fiore was an exempt administrative employee, PPG must show that Fiore's "primary duty consist[ed] of the performance of office or nonmanual field work directly related to management policies or general business operations." WAC 296-128-520(1). An employee's "primary duty" is determined based upon all of the facts in a particular case; although not always dispositive, basing the determination on that work performed by the employee for 50% of his or her time is a "good rule of thumb." Wash. Dep't of Labor & Indus., Administrative Policy ES.A.9.4(5), at 3 (issued Jun. 24, 2005).[3] The fact that an employee performs some manual work does not preclude a determination that the employee meets the administrative exemption. Administrative Policy ES.A.9.4(8), at 4. However, "if the employee performs so much manual work, other than office work, that he or she cannot be said to be basically a white-collar employee, he or she does not qualify for exemption as a bona fide administrative employee." Administrative Policy ES.A.9.4(8), at 4.

¶16 An employee's primary duty is "directly related to management policies or general business operations," WAC 296-128-520(4)(b), where the employee's work consists primarily of "those types of activities relating to the administrative operations of a business *as distinguished from production or sales work in a retail or service establishment.*" Administrative Policy ES.A.9.4(9), at 4 (emphasis added). Moreover, the administrative exemption applies only to "persons who perform work of substantial importance to the management or operation of the business." Administrative

---

[3] An agency's administrative policies, although having no force or effect as a law or regulation, may be persuasive in interpreting the agency's regulations. *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 54, 169 P.3d 473 (2007).

Policy ES.A.9.4(9), at 4. For example, an individual meets the administrative exemption where he or she "partici-pate[s] in the formulation of management policies, or in the operation of the business as a whole" or where his or her work "affects policy" or involves "execut[ing] and carry[ing] the policy out." Administrative Policy ES.A.9.4(9), at 4-5. According to interpretive regulations, "examples of admin-istrative operations include advising the management, plan-ning, negotiating, representing the company, purchasing, promoting sales, [and conducting] business research." Ad-ministrative Policy ES.A.9.4(9), at 4.

¶17 Here, Fiore spent the vast majority of his time performing manual labor at Lowe's stores and making individual retail sales to Lowe's customers and contractors. Fiore estimated that, in a typical four-hour store visit, he would spend approximately two hours managing the "chip rack," where paint color samples are displayed, and another hour "down-stocking" and "rotating stock," which essen-tially involved building displays of and stocking shelves with Olympic products. To assist Fiore in performing these manual duties, PPG provided him with knee pads, ear plugs, a mallet, a hammer, a crowbar, a wrench, and screwdrivers. While Fiore performed these manual service duties, "[c]ustomers would frequently ask [him] questions, assuming [he was] a Lowe's employee." PPG encouraged Fiore, who wore an Olympic shirt and badge during his store visits, to talk with customers, as part of his job was to "promote Olympic products to customers in the aisle." Fiore would also work at the contractor desk, assisting contrac-tors in finding products. "[D]riving daily sales" was the "whole focus of the job"—in order to drive sales, Fiore ensured that the "displays looked good [and] racks were stocked [so that] they looked the way Lowe's wanted it to."

¶18 Further indicating the significance of individual retail sales to Fiore's position is the fact that he, as a Territory Manager, was a member of the "Lowe's National Olympic Field Sales Team." The Sales Team consisted of a

3-person management team, 12 regional sales managers, and 167 Territory Managers. The self-defined "mission" of the Sales Team was to "provide the Lowe's customer with complete customer service resulting in increased retail sales and profits for Lowe's and Olympic."[4] Consistent with this mission, the Sales Team defines the responsibilities of its Territory Managers, whose duties are to (1) "train Lowe's associates," including "in-aisle" training, regarding Olympic brand products; (2) engage in "retail consumer selling" by participating in store events and working "behind [the] paint desk"; (3) make "contractor sales" by attending store events and working at the Lowe's "contractor desk"; and (4) "service Olympic products" by, among other tasks, engaging in "inventory management."[5]

¶19 Moreover, as is clear from the deposition testimony of PPG's management, the work of Territory Managers is not "directly related to management policies or general

---

[4] PPG asserted at oral argument that the corporate document from which this information was obtained had been subject to a motion to strike in the trial court and, therefore, should not be considered on appeal. During the hearing on the parties' opposing motions for summary judgment, the trial court questioned Fiore's counsel regarding the motion to strike. PPG had filed the motion to strike a declaration in which, PPG asserted, Fiore was attempting to authenticate various documents. But the documents had been produced in discovery by PPG. The trial court, apparently determining that PPG's motion to strike was unmeritorious, never ruled on the motion. Because PPG did not claim that the documents "were not authentic" or "not what they purported to be," the trial court did not err by so doing. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 748-49, 87 P.3d 774 (2004). Such documents are "sufficiently authenticated for summary judgment purposes." *Int'l Ultimate, Inc.*, 122 Wn. App. at 748-49.

[5] Prior to September 2007, Territory Managers were referred to by PPG as "Retail Sales Representatives." The duties that they perform, however, did not change with the change in title. Rather, according to an employee who had held both positions, the tasks were "very similar"—the "main objective was to represent the paint brand within Lowe's and promote the sales within the store."

Although a job title is not determinative of whether an employee is an administrative employee, *see* Administrative Policy ES.A.9.4(6), at 3, the former title for Territory Managers suggests that such employees were engaged in individual retail sales—not operations deemed "administrative" for purposes of the MWA exemption. In addition, as discussed later in this opinion, the fact that PPG changed the title of the position from "Retail Sales Representative" to Territory Manager tends to prove that PPG sought to evade statutory overtime wage requirements.

business operations." WAC 296-128-520(1). Territory Managers do not participate in the development of PPG's advertising or promotional campaigns; nor do they work with PPG's finance department to prepare budgets and cost estimates. Territory Managers do not have the authority to mark down prices or to vary store promotional materials without the approval of a store manager. Territory Managers cannot sign legal documents on behalf of PPG or negotiate and bind PPG on significant matters. PPG further admits that Territory Managers do not have the authority to formulate management policies or operating procedures.[6]

¶20 Thus, Fiore's "primary duty" for purposes of the MWA was not "office or nonmanual field work," as required in order to exempt him from the Act's overtime wage protections. WAC 296-128-520. Rather, the record clearly indicates that Fiore spent the vast majority of his time engaged in manual labor and retail sales to individual Lowe's customers.[7] Moreover, Fiore's work was not "directly related to management policies or general business operations." *See* WAC 296-128-520(1). Fiore was not involved in the "administrative operations" of PPG's business; rather, Fiore performed manual labor and individual retail sales in Lowe's stores. *See* Administrative Policy ES.A.9.4(9), at 4. Although Fiore's work likely contributed to PPG's Olympic sales, it was not "of substantial importance to the *management* or *operation* of the business." Administrative Policy ES.A.9.4(9), at 4 (emphasis added).

---

[6] PPG asserts that Territory Managers have the ability to "affect management policies" because management personnel may "ask them for ideas." Were this the test for determining whether an employee is an administrative employee for purposes of the MWA, all employees would be exempt from the Act's protections.

[7] PPG does not dispute that Fiore spent most of his time performing these tasks. Rather, PPG asserts that, nevertheless, these "housekeeping" tasks were not Fiore's "primary duty." In so asserting, PPG cites to cases that are inapposite here. Moreover, PPG's contention is belied by the Department of Labor and Industries' interpretive policy, stating that, "if the employee performs so much manual work, other than office work, that he or she cannot be said to be basically a white-collar employee, he or she does not qualify for exemption as a bona fide administrative employee." Administrative Policy, ES.A.9.4(8), at 4.

¶21 Nevertheless, PPG contends that the primary duty of Territory Managers is "promoting sales" of Olympic products and, in turn, that "promoting sales" is an administrative operation that qualifies an employee as exempt. In support of this contention, PPG cites to *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 3 (1st Cir. 1997), in which the First Circuit held that "marketing representatives" employed by an insurance company fell within the " 'administrative employee' exemption" to the FLSA.[8] There, the marketing representatives acted as the primary contact between the insurance company and the independent insurance agents who sold its products. *Reich*, 126 F.3d at 3-4. Their primary duty was to "cultivate this independent agent sales force, and, thereby, ultimately to increase sales of John Alden products." *Reich*, 126 F.3d at 3. To that effect, each marketing representative had a separate list of 500 to 600 agents whom he or she kept apprised of John Alden products and discussed how those products might meet a customer's needs. *Reich*, 126 F.3d at 4. To perform these duties, the marketing representatives spent "most of their time on the phone with agents, with the remaining time spent completing and reviewing paperwork related to these agent contacts." *Reich*, 126 F.3d at 5. Determining that these employees promoted customer sales *generally*, rather than engaging in particular sales transactions, the court held that they were exempt from FLSA overtime wage requirements as administrative employees. *Reich*, 126 F.3d at 10.

¶22 In so holding, the court contrasted the duties of John Alden marketing representatives with those of the electrical products salespersons described in *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d. Cir. 1991). There, the employees at issue were inside salespersons who spent the majority of their time making telephone sales of electrical products from their offices. *Martin*, 940 F.2d at 902. The court rejected the company's contention that its salesper-

[8] 29 U.S.C. §§ 201-219.

sons were administrative employees who " 'promote sales.' " *Martin*, 940 F.2d at 905. The court held that " 'promoting sales' means something more than routine selling efforts focused simply on particular sales transactions." *Martin*, 940 F.2d at 905. Promoting sales, for purposes of the administrative employee exemption, "consists of marketing activity aimed at promoting (i.e., increasing, developing, facilitating and/or maintaining) customer sales *generally*." *Martin*, 940 F.2d at 905. Noting that the inside salespersons made "discrete sales" and were not "promoters or marketers," the court determined that they did not constitute administrative employees exempt from FLSA overtime wage protections. *Martin*, 940 F.2d at 905.

¶23 Similarly, the Second Circuit has held that an advertising salesperson for a magazine publisher did not "promote sales" for purposes of the administrative employee exemption. *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101 (2d Cir. 2010). In rejecting the employer's assertion that an advertising salesperson was as administrative employee because she "promoted sales," the court reasoned that

> under that theory, any sales clerk in a retail store would "promote sales" when assisting potential customers, and there would be no administrative/sales distinction in a retail store despite the clear assertion of the interpretive rule that sales work in a retail store is *not* administrative work for the purposes of the FLSA.

*Reiseck*, 591 F.3d at 106-07. Contrasting individual sales with the promotion of sales generally, the court provided as an example the application of those principles to a retail clothing store:

> Consider a clothing store. The individual who assists customers in finding their size of clothing or who completes the transaction at the cash register is a salesperson under the FLSA, while the individual who designs advertisements for the store or decides when to reduce prices to attract customers is an administrative employee for the purposes of the FLSA.

*Reiseck*, 591 F.3d at 107. Although the employee in *Reiseck* did " 'develop new clients' with the goal of increasing sales generally," her primary duty was to sell specific advertising space to clients. 591 F.3d at 107. Thus, she was not an administrative employee for purposes of the FLSA. *Reiseck*, 591 F.3d at 107; *accord Kuzinski v. Schering Corp.*, 801 F. Supp. 2d 20 (D. Conn. 2011); *Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200 (S.D.N.Y. 2011).

¶24 In asserting that Fiore's primary duty was to "promote sales," PPG both disregards the actual work performed by Fiore as a Territory Manager and misconstrues the phrase "promoting sales."[9] As explained above, much of Fiore's work consisted of manual labor, which MWA regulations explicitly state is not administrative work. *See* WAC 296-128-520(1) (employee is exempt as administrative employee where his or her "primary duty consists of the performance of office or nonmanual field work"). Moreover, the sales work that Fiore did perform—like the sales work performed by the employees in *Martin* and *Reiseck*—consisted of retail sales to individual customers, not of the promotion of sales generally. Although "promoting sales" constitutes an "administrative operation" exempt from the overtime wage requirements of the MWA, such administra-

___

[9] In a statement of additional authorities, PPG cites to *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822 (10th Cir. 2012), asserting that the case is "relevant to the issue of whether it was appropriate for the Trial Court to grant [Fiore's] motion for summary judgment despite the fact that PPG offered evidence that [Fiore's] primary duty qualified for the administrative exemption." There, the Tenth Circuit held that the question of which of an employee's job duties is "primary" "presents a question of fact rather than an issue of law." *Maestas*, 664 F.3d at 824-25. Thus, "[b]ecause the primary duty determination is a factual one, summary judgment is appropriate only if all reasonable factfinders would conclude" that a particular job duty was the employee's "primary duty." *Maestas*, 664 F.3d at 829.

Here, however, the parties do not dispute the facts regarding those job duties Fiore actually performed. Indeed, both parties filed motions for summary judgment on the question of whether Fiore was an administrative employee exempt from the MWA's overtime wage protections. Rather, PPG simply attempts to portray Fiore's duties as "promoting sales." The question here is not what job duties Fiore primarily performed; instead, the question is whether those duties constitute "promoting sales," thus rendering Fiore an administrative employee exempt from the Act's protections.

tive operations are explicitly contrasted against "sales work in a retail . . . establishment." Administrative Policy ES.A.9.4(9), at 4. Retail sales work—the sales work performed by Fiore as a Territory Manager—does not constitute "promoting sales" for the purposes of the administrative exemption to the MWA's overtime wage requirements. *See, e.g., Reiseck*, 591 F.3d at 107; *Martin*, 940 F.2d at 905.

¶25 The fact that Fiore's primary duty did not involve office or nonmanual field work directly related to the business operations or management policies of PPG is dispositive—Fiore is not an administrative employee exempt from the overtime wage protections of the MWA. *See* WAC 296-128-520. However, we also note that PPG cannot meet its burden of demonstrating that Fiore's work "include[d] work requiring the exercise of discretion and independent judgment." WAC 296-128-520(4)(b). Such work involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." Administrative Policy ES.A.9.4(10), at 5. Moreover, it "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Administrative Policy ES.A.9.4(10), at 5. Decisions regarding "significant matters" are "the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise." Administrative Policy ES.A.9.4(11), at 8.

¶26 PPG asserts that Territory Managers exercise discretion and independent judgment because they are not "scripted" in their interactions with customers or Lowe's employees, because they "develop their own strategies" to promote sales, and because they determine how to best allocate their time. But PPG admits that Territory Managers do not develop the company's promotional messaging

and are not permitted to vary promotional materials. It further admits that Territory Managers do not have the authority to formulate policy or operating procedures. Moreover, Territory Managers do not have the authority to negotiate on behalf of or bind PPG on significant matters. These admitted facts clearly demonstrate that Territory Managers do not "exercise discretion and independent judgment" as required in order to meet the administrative employee exemption to the MWA. *See In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 156-57 (2d Cir. 2010) (holding that pharmaceutical representatives are not administrative employees for purposes of the FLSA because they had no authority to formulate or affect company policy, negotiate and bind the company on significant matters, or deviate from company policies or procedures without prior approval), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, ___ U.S. ___, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012).

¶27 PPG bears the burden of demonstrating that the work performed by Fiore as a Territory Manager plainly and unmistakably constitutes administrative work exempt from the requirements of the MWA. PPG has not met its burden. Accordingly, the trial court did not err by granting Fiore's motion for summary judgment.

III

¶28 PPG next contends that the trial court erred in calculating the value of Fiore's overtime wage claim. First, PPG asserts that the trial court should not have utilized the "time-and-a-half" calculation method. Second, PPG asserts that the trial court erroneously determined that PPG willfully withheld Fiore's wages and, thus, that Fiore was entitled to an award of double damages. On both accounts, we disagree.

¶29 An employee entitled to overtime wages pursuant to the MWA is entitled to compensation "at a rate not

less than one and one-half times the regular rate at which he or she is employed" for hours worked over 40 hours per week. RCW 49.46.130(1). The "regular rate" of pay is the "hourly rate at which the employee is being paid" and "may be determined by dividing the amount of compensation received per week by the total number of hours worked during that week." WAC 296-128-550. An employee is paid for a "fluctuating workweek" when the employee is paid a fixed salary and "it is clearly understood and agreed upon by both employer and employee that the hours will fluctuate from week to week and that the fixed salary constitutes straight-time pay for all hours of work." Wash. Dep't of Labor & Indus., Administrative Policy ES.A.8.1(6), at 5 (issued Nov. 6, 2006). In such circumstances, because it was understood that all hours worked were paid by the salary, the employee is entitled to "one-half hour's pay for each hour over 40 in the work week." Administrative Policy ES.A.8.1(6), at 5. However, "[i]f the employer fails to establish a specified number of hours per week for which the salary is intended to compensate the worker, it will be assumed that the salary is based upon a 40-hour workweek, and thus, 1-1/2 times the worker's regular rate will be due for all hours worked in excess of 40 in each workweek." Wash. Dep't of Labor & Indus., Administrative Policy ES.A.8.2, at 2.

¶30 Our Supreme Court has determined that an employer's practice of paying overtime wages to salaried employees based upon a "fluctuating workweek" did not violate the MWA. *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 519, 7 P.3d 807 (2000). There, Radio Shack compensated its store managers with a fixed salary " 'as straight time pay for all hours worked each workweek' " and paid overtime wages at one-half of the " 'calculated regular rate,' " which was obtained by dividing the fixed salary by the number of hours worked in any given workweek. *Inniss*, 141 Wn.2d at 520. The court considered as persuasive authority a federal regulation permitting employees to be paid a fixed salary for fluctu-

ating workweeks so long as (1) the hourly rate of pay is not less than the applicable minimum wage and (2) the employee " 'receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.' " *Inniss*, 141 Wn.2d at 525-26 (emphasis omitted) (quoting 29 C.F.R. § 778.114(a)). The court thus determined that Radio Shack's compensation policy did not violate the overtime wage provision of the MWA. *Inniss*, 141 Wn.2d at 533-34.

¶31 A local federal court thereafter considered whether an employer who had failed to pay overtime wages in violation of the MWA was "entitled to the employer-friendly flexible work week method of calculating overtime pay under Washington state law." *Monahan v. Emerald Performance Materials, LLC*, 705 F. Supp. 2d 1206, 1215 (W.D. Wash. 2010). The court relied upon the same federal regulation, 29 C.F.R. § 778.114(a), which provides in part:

"Where the clear *mutual understanding* of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each work week, whatever the number, rather than for working 40 hours or some other fixed weekly work, such a salary arrangement is permitted by [FLSA] if [the employee] receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay."

*Monahan*, 705 F. Supp. 2d at 1215 (quoting 29 C.F.R. § 778.114(a)). The court determined that, although the MWA authorizes the use of the flexible workweek methodology, the regulation contained prerequisites not met in that case. *Monahan*, 705 F. Supp. 2d at 1217.

¶32 First, the court determined, the regulation requires "payment of the mandatory 50% overtime premium contemporaneously with payment of the employee's regular straight time pay." *Monahan*, 705 F. Supp. 2d at 1217; *see* 29 C.F.R. § 778.114(c) ("[W]here all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours,

compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula."). Thus, the court held that "the flexible work week method cannot be used to calculate overtime retroactively (where it has not been paid contemporaneously with the overtime work) for the purposes of determining damages under Washington State law." *Monahan*, 705 F. Supp. 2d at 1217. Second, the court held, the flexible workweek methodology applies only where the employer and employee have reached a clear mutual understanding, including "an understanding that the employee will be compensated for his overtime work at a rate of 50% of his regular hourly rate." *Monahan*, 705 F. Supp. 2d at 1217; *see* 29 C.F.R. § 778.114(a). The court concluded that the employees in that case were entitled to pay at the rate of time-and-a-half for the overtime hours that they had worked. *Monahan*, 705 F. Supp. 2d at 1216.

¶33 Here, PPG contends that the trial court erroneously determined that Fiore was entitled to be paid overtime wages at one and one-half times his regular rate of pay; instead, PPG asserts, those damages should be limited to one-half times the regular rate.[10] However, PPG has not established "a specified number of hours per week for which the salary is intended to compensate the worker." Administrative Policy ES.A.8.2, at 2. Thus, it is assumed that the salary was intended to compensate Fiore for a 40-hour workweek.[11] Administrative Policy, ES.A.8.2 at 2. Indeed,

---

[10] PPG contends on appeal that the trial court's "error appears to have originated from its mistaken belief that PPG was advocating for use of the 'fluctuating workweek' method." This assertion misrepresents the facts, as PPG was, indeed, advocating for the use of that method. Moreover, the "half-time" method that PPG advocates on appeal is precisely the "fluctuating workweek method" that PPG attempts to renounce.

[11] In a statement of additional authorities, PPG cites to *Bao Yi Yang v. Shanghai Gourmet, LLC*, No. 10-17830, 2012 WL 860937, 2012 U.S. App. LEXIS 5464 (9th Cir. March 15, 2012), asserting that the case is relevant to the issue of how to determine the value of Fiore's overtime wage claim. There, the Ninth Circuit addressed whether the District Court "misapplied federal and California wage and hour standards for determining [the plaintiffs'] regular rates of pay." *Bao Yi Yang*, WL 860937, at *1, 2012 U.S. App. LEXIS 5464, at *1. In an unpublished opinion, the court stated that "[a]bsent explicit proof of a mutually agreed upon

the record suggests that Fiore's salary was intended to be compensation for a 40-hour workweek—his "new hire form" lists the "standard conditions—working hrs/week" to be "40." Furthermore, because he was misclassified by PPG as exempt from MWA requirements, Fiore was not paid overtime wages contemporaneously with the overtime work. *See Monahan*, 705 F. Supp. 2d at 1217. As in *Monahan*, the prerequisites for use of the fluctuating workweek method of overtime wage calculation were not met here.[12] The trial court did not err by rejecting PPG's request for application of the "fluctuating workweek" method of calculating Fiore's damages.

■ ¶34 PPG further asserts that the trial court erred by determining that PPG had willfully withheld wages owed to Fiore and, therefore, that Fiore was entitled to an award of double damages. Any employer who "[w]ilfully and with intent to deprive [an] employee of any part of his or her wages" pays to the employee a lower wage than that to which the employee is entitled is liable to the employee "for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages." RCW 49.52.050(2), .070. This statute, which provides "an effective mechanism for recovery even where wage amounts wrongfully withheld may be small," "must be liberally construed to advance the Legislature's intent to protect employee wages and assure

---

rate of hourly pay, the regular rate actually paid to a salaried employee is obtained by dividing the employee's weekly wage by the number of hours worked each week." *Bao Yi Yang*, WL 860937, at *1, 2012 U.S. App. LEXIS 5464, at *2-3.

However, in *Bao Yi Yang*, the Ninth Circuit was interpreting federal and California wage and hour laws. Washington interpretive policy states, to the contrary, that "[i]f the employer fails to establish a specified number of hours per week for which the salary is intended to compensate the worker, it will be assumed that the salary is based upon a 40-hour workweek, and thus, 1-1/2 times the worker's regular rate will be due for all hours worked in excess of 40 in each workweek." Administrative Policy ES.A.8.2, at 2. We will not employ a cursory statement made in an unpublished decision interpreting another state's law to subvert a properly promulgated Washington declaration of administrative policy.

[12] Although *Monahan* is not controlling authority, its interpretation of 29 C.F.R. § 778.114 is persuasive.

payment." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998).

■ ¶35 Our Supreme Court has noted that the test for "willful" failure to pay is not stringent—the employer's failure to pay must simply be volitional. *Schilling*, 136 Wn.2d at 159. "Willful means 'merely that the person knows what he is doing, intends to do what he is doing, and is a free agent.'" *Schilling*, 136 Wn.2d at 160 (internal quotation marks omitted) (quoting *Brandt v. Impero*, 1 Wn. App. 678, 681, 463 P.2d 197 (1969)). An employer's failure to pay wages is not willful where it is due to inadvertence or carelessness or where "a 'bona fide' dispute existed between the employer and employee regarding the payment of wages." *Schilling*, 136 Wn.2d at 160. A "bona fide" dispute is a "'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Schilling*, 136 Wn.2d at 161.

■ ¶36 PPG asserts that Fiore must demonstrate that PPG did not have a genuine belief that it had properly classified Fiore as an administrative employee.[13] However, a finding of willfulness is not precluded because Fiore did not demonstrate the absence of a belief by PPG that Fiore was improperly classified as exempt. Indeed, such a requirement would subvert the remedial purpose of the MWA by requiring employees to prove a negative based upon facts not within their knowledge. Rather, the question is whether PPG acted volitionally in failing to pay Fiore overtime wages. *Schilling*, 136 Wn.2d at 159-60. The record demonstrates that PPG's management participated in meetings in which this matter was discussed. Thus, the record indicates

---

[13] PPG contends both (1) that Fiore was required to demonstrate that PPG lacked a genuine belief that it had properly classified Fiore as exempt and (2) that the trial court erroneously considered PPG's state of mind in determining whether a bona fide dispute existed. In one instance, PPG contends, its state of mind is relevant; in the other, it asserts, it is irrelevant. PPG cannot have it both ways.

that PPG acted volitionally in failing to pay the wages owed to Fiore.[14]

¶37 The trial court denied PPG's assertion that a "bona fide" dispute exists with regard to whether Fiore was properly classified as an exempt employee, noting that PPG "declined to put forward the facts it considered when consulting on the issue [of the exemption] with counsel."[15] Although PPG asserts that its state of mind is not relevant to whether a "fairly debatable" dispute exists, the factors considered by PPG in making the exemption determination could possibly support its position, were they probative thereof. Instead, the record actually put before the trial court does not support PPG's contention that a bona fide dispute exists. Rather, given that PPG changed the title of the position that Fiore held from "Retail Sales Representative" to "Territory Manager," the record supports the opposite conclusion—that PPG was intentionally attempting to evade the MWA's overtime wage requirements. The trial court did not err by awarding double damages pursuant to RCW 49.52.070.

## IV

¶38 PPG finally contends that the trial court abused its discretion in calculating Fiore's award of attorney fees and costs. Contrary to PPG's contention, the trial court properly

---

[14] PPG cites the arbitrator's ruling in its favor as evidence that a "bona fide" dispute exists regarding whether it owed overtime wages to Fiore. This is just one of the many references made by PPG in its briefing on appeal to the substance of the arbitrator's decision. In response, Fiore filed in this court a motion to strike such references. Where a party seeks a trial de novo following an adverse arbitration decision, the "trial de novo shall be conducted as though no arbitration proceeding had occurred." MAR 7.2(b)(1). Moreover, "[n]o reference shall be made to the arbitration award" during the trial de novo. MAR 7.2(b)(1). Because PPG's repeated references to the arbitrator's decision are improper, we do not consider them in resolving this case.

[15] Contrary to PPG's contention, the trial court, in making this statement, did not employ an "adverse inference" against PPG based upon PPG's assertion of the attorney-client privilege. Rather, the trial court simply pointed out that PPG had made no effort to explain why it had classified Territory Managers as administrative employees exempt from the overtime wage requirements of the MWA.

calculated the lodestar amount in determining the fee award. Accordingly, we affirm the trial court's determination of the lodestar amount.

■ ■ ¶39 PPG first contends that judicial estoppel precludes an award of attorney fees in an amount in excess of the amount that Fiore predicted at the Federal District Court hearing regarding PPG's removal of this matter to federal court. "The equitable doctrine of judicial estoppel prevents a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position in another court proceeding." *Mavis v. King County Pub. Hosp. Dist. No. 2*, 159 Wn. App. 639, 650, 248 P.3d 558 (2011). In determining whether to apply this doctrine, courts consider (1) whether the party's latter position is clearly inconsistent with its former position, (2) whether judicial acceptance of an inconsistent position would create the perception that the court was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Mavis*, 159 Wn. App. at 650. We review judicial estoppel rulings for abuse of discretion. *Miller v. Campbell*, 164 Wn.2d 529, 536, 192 P.3d 352 (2008).

¶40 Following PPG's removal of this matter to federal court, Fiore asserted in the District Court that the total award in a "typical wage claim case" would be less than $75,000, including attorney fees. Following remand to the superior court and Fiore's successful motion for summary judgment, the trial court awarded to Fiore attorney fees in the amount of $579,947. However, circumstances changed between the time of the federal court hearing and the time that fees were awarded in superior court. As the trial court found, this case became a "test case" for PPG, as numerous similar cases against PPG were pending throughout the country. Indeed, PPG admitted that this case had "national implications." The disparity between the predicted amount of fees and the actual amount of fees resulted from a change

in circumstances, not from the assertion of inconsistent positions. The trial court acted within its discretion in not applying the doctrine of judicial estoppel to limit Fiore's award of attorney fees.

¶41 PPG next contends that the trial court, in various respects, improperly evaluated Fiore's fee petition. "[I]t is the trial judge who watches a case unfold and who is in the best position to determine the proper lodestar amount." *Morgan v. Kingen*, 141 Wn. App. 143, 163, 169 P.3d 487 (2007). Accordingly, "[f]ee decisions are entrusted to the discretion of the trial court." *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). We will reverse an attorney fee award only where the trial court exercised its discretion on untenable grounds or for untenable reasons. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

¶42 The trial court determines the proper amount of an attorney fee award using the lodestar method, "calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred in obtaining the successful result." *Mahler*, 135 Wn.2d at 434. The court must determine "that counsel expended a reasonable number of hours in securing a successful recovery for the client" and that counsel's hourly rate was reasonable. *Mahler*, 135 Wn.2d at 434. In order to provide an adequate record for review, the trial court must enter findings of fact and conclusions of law in support of its fee award. *Mahler*, 135 Wn.2d at 435.

¶43 PPG first asserts that the trial court erred by rejecting considerations of proportionality between the damages award and the attorney fee award without explaining the reasonableness of its decision.[16] However, our Supreme Court has clearly held that "the amount of the

[16] Contrary to PPG's assertion, the trial court did explain why it "reject[ed] a proportionality requirement" in this case. The court noted that "such a rule would effectively preclude meritorious wage claims under RCW 49.52.070, while simultaneously promoting frivolous defense litigation strategies."

recovery, while a relevant consideration in determining the reasonableness of the fee award, is not a conclusive factor." *Mahler*, 135 Wn.2d at 433. The court determined that it would "not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small." *Mahler*, 135 Wn.2d at 433. Rather, the court held, the reasonableness of the fee award is determined by the lodestar method. *Mahler*, 135 Wn.2d at 433. Here, the trial court determined that the number of hours and the hourly rate billed were reasonable and entered extensive findings and conclusions in support of its determination. The court did not abuse its discretion by declining to limit Fiore's attorney fee award in proportion to the amount of his damages.

¶44 PPG additionally asserts that the trial court erroneously awarded to Fiore fees based upon "unsuccessful work" in litigating a protective order and the arbitration. In determining the number of hours reasonably expended, the court "should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time." *Chuong Van Pham*, 159 Wn.2d at 538. However, where " 'the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories,' " a lawsuit cannot be " 'viewed as a series of discrete claims' " and, thus, the claims should not be segregated in determining an award of fees. *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 672-73, 989 P.2d 1111 (1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Here, Fiore brought only one claim—an overtime wage claim pursuant to the MWA; accordingly, case law discussing segregation between successful and unsuccessful claims is inapposite. *See Brand*, 139 Wn.2d at 673 (holding that workers' compensation claims are not "discrete, unrelated claims" but, rather, "deal with one set of facts and related legal issues"). Moreover, that PPG moved to arbitrate the case resulted in the work performed by Fiore's attorneys in the arbitration proceed-

ings. It was necessary for them to engage in that process. Thus, the work was *not* unnecessary. Neither was it "unsuccessful," given the ultimate resolution of the merits of the claim.

¶45 PPG also contends that the trial court should not have awarded fees (1) related to the motion to remand to state court, (2) for "duplicative efforts" where multiple attorneys attended various court proceedings, and (3) for work performed by partners that PPG believes should have been performed by associates or paralegals. PPG additionally asserts that the fees awarded for summary judgment preparation were "excessive." However, PPG provides no support for its assertion that the trial court erroneously awarded to Fiore fees incurred in obtaining remand to state court. Similarly, PPG does not demonstrate that "duplicative effort" occurred because more than one attorney attended various court proceedings or that the fee was excessive because work performed by partners might have been performed by associates or paralegals. Moreover, PPG does not convincingly argue that the fees on summary judgment were excessive. The trial court listed several reasons for the reasonableness of Fiore's fees, including that his counsel has a "high degree of skill," that the action presented an "unusually high risk" for counsel, and because "the results were excellent." The trial court did not abuse its discretion in determining the reasonableness of the fees.

¶46 Nevertheless, PPG further asserts that the trial court erroneously considered an "impermissible factor" in assessing the reasonableness of Fiore's fee petition. PPG contends that an opposing party's attorney fees are not relevant to determining the reasonableness of its adversary's attorney fee request. Thus, PPG asserts, the trial court erroneously made an "adverse inference" against PPG because it had not submitted a record of its own expended

fees.[17] Addressing PPG's contention that the number of hours expended by Fiore's counsel was excessive, the trial court "[found] it noteworthy" that PPG's counsel "[made] no attempt to compare the hours they expended in defending the case." Because "[t]his is a common practice when the hours are disparate," the court "[could] only assume that the number of hours and amount of fees defending the case were not substantially lower (if lower at all) than [Fiore's] hours and fees."

¶47 Contrary to PPG's assertion, however, "[a] comparison of hours and rates charged by opposing counsel is probative of the reasonableness of a request for attorney fees by prevailing counsel." *Heng v. Rotech Med. Corp.*, 2006 ND 176, 720 N.W.2d 54, 65; *see also McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805 (9th Cir. 1994); *Citgo Petroleum Corp. v. Krystal Gas Mktg. Co.*, 466 F. Supp. 2d 1263 (N.D. Okla. 2006); *Blowers v. Lawyers Coop. Publ'g Co.*, 526 F. Supp. 1324 (W.D.N.Y. 1981); *Naismith v. Prof'l Golfers Ass'n*, 85 F.R.D. 552 (N.D. Ga. 1979); *Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662 (W.D.N.C. 1978). Where a defendant, challenging a plaintiff's attorney fee petition, contends that the request includes unnecessary or excessive charges, the amount of time expended by defense counsel in performing the same task "may well be the best measure of what amount of time is reasonable for this task." *Davis v. Fid. Techs. Corp.*, 180 F.R.D. 329, 332 (W.D. Tenn. 1998). Thus, the defendant's expenditures in completing various litigation tasks "are relevant and probative." *Davis*, 180 F.R.D. at 332; *see also Stastny*, 77 F.R.D. at 663 ("In a contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time

---

[17] PPG also asserts that the trial court erroneously considered the fact that PPG had engaged in "aggressive litigation tactics" in determining the reasonableness of Fiore's fee request. However, PPG provides no support for its contention that this is an improper consideration. Indeed, common sense indicates that the amount of fees incurred is often directly related to how aggressively an opposing party litigates a case.

that the opposition found necessary to prepare its case would be probative.").

¶48 Here, PPG contested the reasonableness of Fiore's attorney fee petition, asserting, among other challenges, that the petition contained fees for duplicative effort and improperly included work performed at partner rates that, PPG asserts, should have been performed by associates or paralegals. Moreover, PPG contends that the hours expended were excessive because the case was resolved on summary judgment. But, as explained above, PPG cites no basis for these contentions. The trial court thus properly recognized that evidence of PPG's own attorney fees, which PPG did not provide, would have served as a useful comparison in determining the reasonableness of Fiore's fee petition. The court did not err by so doing.

## V

¶49 Finally, PPG contends that the trial court erred by awarding to Fiore a .25 multiplier on the attorney fee award. Because the extensive, time-consuming nature of the litigation was encompassed within the lodestar amount, and because the policies cited by the trial court as justification for the multiplier do not support such an award, the trial court erred by awarding the multiplier. Thus, although we affirm the trial court's award of attorney fees and costs in all other respects, we reverse the trial court's award of the multiplier.

¶50 Although it is "presume[d] that the lodestar represents a reasonable fee, occasionally a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case." *Chuong Van Pham*, 159 Wn.2d at 542. Such an adjustment to the lodestar "is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk." *Chuong Van Pham*,

159 Wn.2d at 541. However, "to the extent, if any, that the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees, no further adjustment duplicating that allowance should be made." *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 598, 675 P.2d 193 (1983). A trial court abuses its discretion in granting a multiplier "when it takes irrelevant factors into account." *Chuong Van Pham*, 159 Wn.2d at 543.

¶51 Here, the trial court awarded to Fiore a .25 multiplier, concluding that

[a] multiplier in the amount of .25 is reasonable given the multiple risks in this case: 1) contingent fee, 2) risk of paying attorneys, 3) risk of paying attorneys fees which would likely be higher than ordinary, given the "test case" posture of the case, and 4) the use of national counsel from a large firm from three different states. Plaintiff's Counsel have reduced their billable hours, by way of courtesy write-offs, and have not inflated their hourly rates to account for this risk.

Thus, the trial court provided, in essence, two justifications for its award of a multiplier—(1) that Fiore's attorneys would not be paid unless they prevailed and they would be opposed by skilled, aggressive litigators and (2) that, pursuant to statute and court rule, Fiore would be required to pay PPG's attorney fees and costs in the event that his position was not improved on the trial de novo.[18]

¶52 We agree that "the high risk nature of a case" may justify the award of a risk multiplier. *Chuong Van Pham*, 159 Wn.2d at 543. In *Chuong Van Pham v. Seattle City Light*, we determined that such an adjustment was justified based upon the difficulties of proof presented in that employment discrimination case. 124 Wn. App. 716, 722,

---

[18] MAR 7.3 provides that "[t]he court shall assess costs and reasonable attorney fees against a party who appeals the [arbitration] award and fails to improve the party's position on the trial de novo." *See also* RCW 7.06.060(1) ("The superior court shall assess costs and reasonable attorneys' fees against a party who appeals the [arbitration] award and fails to improve his or her position on the trial de novo.").

103 P.3d 827 (2004), *rev'd on other grounds*, 159 Wn.2d 527. There, because the plaintiffs were " 'unable to explain their claims,' " their attorney pursued "a high-risk litigation strategy of proving the case through cross-examination and the testimony of adverse witnesses." *Chuong Van Pham*, 124 Wn. App. at 722. The attorney called nine adverse witnesses before calling his first " 'friendly witness.' " *Chuong Van Pham*, 124 Wn. App. at 722. Based upon the risk of taking an employment discrimination case in which the plaintiffs had " 'difficultly in articulating the nature of the claims of discrimination against them,' " we determined that a multiplier was warranted. *Chuong Van Pham*, 124 Wn. App. at 722-23.[19]

¶53 In contrast, here, the litigation was not "high risk." It did not require the pursuit of risky trial strategies or present novel problems of proof. Instead, this is a straightforward wage and hour case—indeed, one properly resolved on summary judgment—made difficult by the "test case" nature of the case and PPG's "aggressive litigation tactics." In essence, this litigation was made complicated only by the amount of time and skill that it required—a consideration already accounted for in the lodestar amount. *See Chuong Van Pham*, 159 Wn.2d at 541 ("The difficulty of establishing the merits of the case is . . . already reflected in the lodestar amount because the more difficult a case is, the more hours an attorney will have to prepare and the more skilled an attorney will have to be to succeed." (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992))). Because the time expended and the hourly rates underlying the lodestar amount account for the difficulties presented by this case, such grounds cannot

---

[19] Our Supreme Court agreed that the trial court had abused its discretion by taking into account irrelevant factors in denying the plaintiffs' request for a multiplier. *Chuong Van Pham*, 159 Wn.2d at 543. The court remanded to the trial court to determine, absent the improper considerations, whether the lodestar amount constituted sufficient compensation. *Chuong Van Pham*, 159 Wn.2d at 543-44.

justify the award of a risk multiplier.[20] *See Bowers,* 100 Wn.2d at 598-99.

¶54 Moreover, in awarding the multiplier, the trial court improperly considered Fiore's risk in pursuing a trial de novo following the unfavorable arbitration decision. As noted above, in seeking the trial de novo, Fiore faced the risk of being required to pay PPG's attorney fees and costs in the event that his position was not improved on the trial de novo. *See* RCW 7.06.060(1); *see also* MAR 7.3. This risk, however, results from a legislative policy preference of discouraging appeals from arbitration decisions. The legislature has staked out its ground on this public policy question—appeals from arbitration decisions are discouraged and risk is assigned to those who appeal. By utilizing a multiplier, the trial court actually *incentivized* that which the legislature seeks to *discourage*—appeals from arbitration decisions. In so doing, the trial court erred. The legislature's determination of policy must control.[21] The risk cited by the trial court cannot justify the award of a multiplier increasing the award of fees to Fiore's attorneys.

¶55 Because, here, the trial court's award of a multiplier was based upon considerations already accounted for by the lodestar amount and the risk legislatively imposed for seeking a trial de novo, we reverse that aspect of the award. We affirm the trial court's award of attorney fees and costs in all other respects.

## VI

¶56 Fiore requests an award of attorney fees on appeal pursuant to RCW 49.52.070, which provides for an

---

[20] Unquestionably, a case such as this—where both liability and damages are resolved on summary judgment and the cause of action alleged and proved carries with it a statutory entitlement to an award of reasonable attorney fees to be paid by a large, solvent corporation—is the "least risky" of contingent fee cases.

[21] Moreover, the risk of incurring a monetary obligation as the result of a fee award entered pursuant to RCW 7.06.060 is run by the *client*, not by the *attorney*. Rewarding the *attorney* with a greater fee, when the risk was actually taken by the *client*, does not further any reasonable public policy.

award of attorney fees where an employer willfully fails to pay an employee wages to which he or she is entitled. Such is the case here. Upon proper application, a commissioner of this court will enter an appropriate order awarding to Fiore attorney fees for this appeal.

¶57 Affirmed in part, reversed in part, and remanded.

APPELWICK and LAU, JJ., concur.

Review denied at 175 Wn.2d 1027 (2012).