# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TRUEBLUE, INC., a Washington corporation; and its wholly owned subsidiary, LABOR READY NORTHWEST, INC., | No. 52665-4-II |
| Plaintiffs/Appellants, | |
| v. | UNPUBLISHED OPINION |
| KELLY MARCHEL a/k/a KELLY LANGLOIS; and ANYTIME LABOR-SEATTLE, LLC d/b/a/ LABORMAX, | |
| Defendants/Respondents. | |

| |
|---|
| KELLY MARCHEL a/k/a KELLY LANGLOIS, |
| Counterclaim Plaintiff |
| v. |
| TRUEBLUE, INC., a Washington corporation; and its wholly owned subsidiary, LABOR READY NORTHWEST, INC.; PAUL SHEVCHENKO, an individual; TATIANA REEVES, an individual; and MARLINDA NEWMYER, an individual, |
| Counterclaim Defendants. |

SUTTON, A.C.J. — This appeal arises from an employment dispute between TrueBlue, Inc.,
and its subsidiary, Labor Ready Northwest, Inc. (collectively TrueBlue) and Kelly Marchel, a
former employee of TrueBlue, and her current employer, Anytime Labor, Inc. d/b/a/ LaborMax
(LaborMax). After being terminated by TrueBlue, Marchel worked for TrueBlue's competitor,
LaborMax, and allegedly began soliciting TrueBlue's clients and using its trade secrets.

TrueBlue sued Marchel and LaborMax, alleging that Marchel breached her contract by violating her non-compete agreement with TrueBlue, interfered with contractual relations with its customers, and violated the Uniform Trade Secrets Act.[1]  Marchel counterclaimed, alleging that TrueBlue misclassified her as exempt from overtime under the Washington Minimum Wage Age (MWA)[2] and terminated her based on age in violation of the Law Against Discrimination (WLAD)[3].  The superior court granted Marchel partial summary judgment on her MWA claim, ruling that TrueBlue had misclassified her as an exempt employee.  The court also granted Marchel partial summary judgment on TrueBlue's breach of contract claim, ruling that TrueBlue could not enforce its non-compete agreement because it had breached its contract with Marchel by adjusting her compensation structure without adequate consideration.

The case proceeded regarding the remaining claims.  TrueBlue failed to timely or properly respond to multiple discovery requests and in a series of hearings, the superior court found that TrueBlue had repeatedly violated the court's discovery orders and it imposed CR 37 sanctions.  The court ultimately dismissed TrueBlue's remaining claims, awarded damages, and entered judgment against TrueBlue in favor of Marchel and LaborMax as a CR 37 sanction.

TrueBlue argues that the superior court erred by (1) granting Marchel partial summary judgment on her MWA claim; (2) granting Marchel partial summary judgment on TrueBlue's breach of contract claim and ruling that TrueBlue could not enforce its non-compete agreement

---

[1] Ch. 19.108 RCW.

[2] Ch. 49.46 RCW.

[3] Ch. 49.60 RCW.

because it had breached its contract with Marchel by adjusting her compensation structure without adequate consideration; (3) ordering CR 37 sanctions; and (4) violating TrueBlue's constitutional right to a jury trial on the damages awarded to Marchel and LaborMax in its sanction order. Marchel asks for an award of appellate attorney fees and costs.

We hold that the superior court erred by (1) granting Marchel partial summary judgment on her MWA claim because there are genuine issues of material fact regarding her classification, and (2) granting Marchel partial summary judgment on TrueBlue's breach of contract claim because there are genuine issues of material fact regarding whether TrueBlue breached its contract with Marcel by changing her compensation structure without adequate compensation. We also hold that the superior court did not err by imposing CR 37 sanctions and entering judgment against TrueBlue, and the court did not violate TrueBlue's right to a jury trial by imposing liability under CR 37 and awarding damages to Marchel and LaborMax in its sanction order. We deny Marchel's request for an award of appellate attorney fees and costs.

Even though we are remanding for further resolution of the merits, should Marchel ultimately prevail on the merits of her MWA claim and her breach of contract defense, the determination of those damages as part of the CR 37 sanctions would still apply. Additionally, all of the other aspects of the CR 37 sanctions will also apply.

We reverse the partial summary judgment orders and remand for further proceedings, including a determination of whether the non-compete agreement was subject to a one year limitations period and whether TrueBlue's non-compete agreement was valid and enforceable. We affirm the CR 37 sanctions order and the damages awarded to Marchel and LaborMax as a

sanction. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

I. BACKGROUND REGARDING TRUEBLUE AND LABOR READY

TrueBlue through Labor Ready provides temporary skilled workers to a variety of business and industries. TrueBlue operates within geographic regions subdivided into markets, and each market has several branches. The market and district managers create sales plans for specific stores and locations within a region; they lead service and sales for that region; and they plan, organize, direct, and monitor strategies to grow market share and improve TrueBlue's position. TrueBlue provides detailed policies, procedures, corporate guidance, and specific sales training for field staff including branch managers.

II. MARCHEL'S POSITION AS BRANCH MANAGER

TrueBlue hired Marchel to work as a branch manager for a Vancouver store from 2007 until her termination in November 2015. Marchel claims that she was required to manage sales for the business and to spend at least "75% of her workday in the marketplace selling." Clerk's Papers (CP) at 1354. That is, she spent at least three quarters of her time on cold calls, emails, solicitations, and site visits. She also spent time opening the store, coordinating with three customer service representatives for the placement and payment of temporary workers, and monitoring the branch's budget. Marchel claimed that she regularly worked between 50 and 70 hours per week and was expected to be on call and available to communicate with clients 24 hours per day.

According to her former supervisor, Paul Shevchenko, Marchel's primary duty was to provide sales support. He claimed that Marchel was responsible for day-to-day management and administration. This included planning long-term business and marketing strategies, serving as the company representative to clients and employees, maintaining existing client relationships, researching new business contacts, and deciding on strategies for growth. Marchel was also responsible for recruiting, training, disciplining, and general managing of other branch staff. Based on her position, TrueBlue classified Marchel as salaried and exempt from overtime pay under the MWA.

## II. EMPLOYMENT AGREEMENT AND NON-COMPETE AGREEMENT

As part of her employment, TrueBlue required Marchel to sign an employment agreement. The employment agreement expressly stated in relevant part that TrueBlue (through Labor Ready) may change her compensation including her bonus structure. It stated in part, "This . . . may be modified by Labor Ready from time to time. . . . If [e]mployee is eligible for a bonus under any such plan, [e]mployee understands and agrees that Labor Ready has the right to change or discontinue any bonus plan at any time." CP at 697. Marchel's compensation was comprised of a salary plus a bonus during her employment.

TrueBlue also required Marchel to sign an "Agreement Regarding Non-Competition, Non-Interference, Non-Solicitation, and Confidentiality." CP at 23. The non-compete agreement had post-employment restrictions and provided that the consideration for these restrictions was "the compensation and benefits described in [her] [e]mployment [a]greement." CP at 23. The agreement included the following restrictions: Marchel could not work for a competitor within 25 miles of any TrueBlue office where she was employed, could not obtain confidential information

5

after leaving TrueBlue, and could not have supervisory responsibility for 12 months after leaving TrueBlue.

Between 2014 and 2015, TrueBlue altered Marchel's compensation package under the employment agreement. Marchel objected to the new bonus structure but continued to work for TrueBlue and to receive her base salary and bonus.

In November 2015, TrueBlue terminated Marchel. Marchel subsequently accepted employment with TrueBlue's competitor, LaborMax, in Tacoma. Marchel later transferred to the Vancouver branch of LaborMax.

### III. COMPLAINT AND COUNTERCLAIM

TrueBlue filed a complaint and sought a temporary restraining order against Marchel and LaborMax. TrueBlue alleged that (1) Marchel was working for LaborMax, a competitor, in violation of the non-compete agreement because LaborMax was located within 25 miles of TrueBlue's Vancouver store, (2) Marchel and LaborMax were using TrueBlue's trade secrets information in violation of the Uniform Trade Secrets Act, and (3) LaborMax had wrongfully interfered with its contract by knowingly employing Marchel in violation of the non-compete agreement.

Marchel counterclaimed. She alleged that TrueBlue had (1) violated the MWA by misclassifying her as exempt from overtime, thereby excusing her from having to abide by the non-compete agreement; (2) changed her compensation structure without adequate consideration and in doing so, breached its employment agreement with her; and (3) violated the WLAD by discharging her based on her age and replacing her with a younger, less experienced employee. TrueBlue denied Marchel's counterclaims.

IV. PRELIMINARY INJUNCTION

On September 9, 2016, the superior court granted TrueBlue a preliminary injunction against Marchel and LaborMax, enforcing the provisions of the non-compete agreement. The injunction ordered Marchel and LaborMax to return to TrueBlue any confidential and proprietary information and other property they had allegedly taken. The injunction enjoined Marchel from working in any capacity for any "[c]onflicting [o]rganization and/or any [c]lient within any [b]usiness [a]rea," employing any colleague or current employee of TrueBlue, initiating contact with any potential employment candidates, and soliciting or working with any current TrueBlue client. CP at 637.

V. PARTIAL SUMMARY JUDGMENT MOTIONS AND ORDERS

Prior to the preliminary injunction being lifted, the parties cross moved for partial summary judgment in 2017. TrueBlue moved for partial summary judgment on its breach of the non-compete agreement claim and on its assertion that Marchel's counterclaims were limited to a one year statute of limitations. Marchel moved for partial summary judgment on her MWA claim and on TrueBlue's breach of the non-compete agreement claim.

In October, the superior court granted Marchel partial summary judgment. The court concluded that, as a matter of law, TrueBlue misclassified Marchel as an overtime exempt employee under the MWA and that Marchel was entitled to damages for unpaid wages if proved. The court also ruled that TrueBlue breached its agreement with Marchel by changing her compensation structure without adequate compensation, and thus, TrueBlue could not enforce its non-compete agreement. Therefore, the court dismissed TrueBlue's claim for breach of the non-

compete agreement. Finally, the court vacated the preliminary injunction, ruling that it had been wrongfully entered.

As to TrueBlue's other arguments in its motion, the superior court ruled that there were genuine issues of material fact as to whether Marchel's counterclaims were barred by the one year statute of limitations agreed to by the parties and whether the non-compete agreement was procedurally unconscionable or just generally unconscionable. After the court's ruling, the following issues remained for trial: Marchel's WLAD claim, Marchel's overtime damages, TrueBlue's trade secrets claim, and Marchel's and LaborMax's damages from the wrongfully entered injunction.

## VI. MARCHEL'S DISCOVERY, TRUEBLUE'S RESPONSES, AND THE COURT'S ORDERS

It is undisputed that throughout the case, TrueBlue failed to timely or properly respond to Marche's discovery requests. On appeal, TrueBlue admits that its responses to Marchel's discovery requests were not timely as required under CR 26 and as ordered repeatedly by the superior court.

Between January 2017, when Marchel served her first discovery request, and May 2018, when the court imposed the harshest CR 37 sanctions, the superior court held multiple hearings related to TrueBlue's failure to fully participate in discovery, including hearings addressing CR 37 sanctions against TrueBlue. Because the material facts are not in dispute, we briefly discuss these hearings and orders.

In January 2017, Marchel sent her first discovery request to TrueBlue and sent her second discovery request to TrueBlue in January 2018. TrueBlue failed to respond fully to either request and did not produce witnesses for deposition.

In May 2017, Marchel filed her first motion to compel full production. The superior court found that TrueBlue failed to fully and timely respond to the discovery, granted Marchel's motion to compel discovery in part, and ordered TrueBlue to supplement its discovery responses. The court also awarded Marchel her attorney fees and costs under the 2007 employment agreement related to this motion. Despite this order and TrueBlue's CR 26(g) certification that it had complied, TrueBlue continued to withhold responsive, non-privileged documents.

In January 2018, Marchel requested production of all of TrueBlue's employment policies, which the court ordered to be produced by March 26. On April 20, Marchel deposed TrueBlue's CR 30(b)(6) designated witness, who testified that TrueBlue had employee handbooks. At this deposition, Marchel discovered that TrueBlue was withholding documents responsive to Marchel's first discovery requests in January 2017, which the superior court had ordered produced four months earlier.

On March 2, Marchel filed her second motion to compel. On March 19, the superior court granted Marchel's motion to compel, and ordered TrueBlue to fully respond to her discovery requests and produce responsive documents, without objection, no later than March 26, which TrueBlue failed to do.[4] After this hearing, a dispute arose about the court ordered production.

Marchel filed a motion to show cause and requested additional CR 37 sanctions. TrueBlue responded that it did not willfully violate the court's March 19 order and that CR 37 sanctions were not warranted.

---

[4] TrueBlue's appellate counsel concedes that their discovery responses were untimely and admits that CR 37 sanctions are appropriate.

At the March 2018 hearing, the superior court ruled that over the past one and a half years of discovery, TrueBlue acted willfully and intentionally, and its violations had substantially prejudiced Marchel's ability to prepare for trial. The court continued the trial until August 6. The court ordered further production by TrueBlue, ordered four witnesses of TrueBlue's to be deposed, considered a monetary penalty to address any benefit TrueBlue gained by the trial continuance, and granted Marchel's request for an award of attorney fees and costs related to the motions to compel. The court reserved ruling on whether harsher CR 37 sanctions were appropriate, ruling that it would not impose the harshest sanctions based on the record before it at that time. The court also ordered Marchel to present her attorney fees and costs on her wage claim and her breach of contract claim. The court also invited the parties to file supplemental briefing and set another hearing on whether harsher sanctions were warranted under CR 37(b)(2).

At the next hearing in April 2018, the superior court granted Marchel's motion for additional CR 37(b)(2) sanctions, orally ruling that TrueBlue's method of production for 750 terabytes of court ordered production was unreasonable. The court also ruled that although TrueBlue had been found to be willfully noncompliant at the March 19 hearing, that it had made significant efforts to comply with the production since that time, but that its efforts were still not sufficient. Also in April, after the deposition of TrueBlue's CR 30(b)(6) witness, TrueBlue first produced three employee policies, including a 2010 employee handbook requested by Marchel in her first January 2017 discovery request.

VII. HEARING AND ORDER GRANTING HARSHER SANCTIONS UNDER CR 37

At the next hearing in May 2018, the superior court considered whether harsher sanctions under CR 37(b)(2) were appropriate. The court found that TrueBlue failed to comply with its prior

discovery orders and that TrueBlue offered no reasonable justification or excuse for its failure to respond to Marchel's first and second discovery requests. The court found that "the discovery sought by [Marchel] was tied directly to [TrueBlue's] trade secrets misappropriation claim; [Marchel's] burden of proof on her age discrimination counterclaim; [TrueBlue's] affirmative defenses; and [Marchel's] damages." CP at 2815. The court further found that "a pattern of intentional discovery abuse has gone on throughout this litigation that both pre-dates and post-dates the Rocke Law Group's involvement as [TrueBlue's] counsel. [TrueBlue] engaged in willful and deliberate obstruction of the discovery process, and this has prejudiced [Marchel's] ability to prepare for trial." CP at 2815.

The superior court concluded that TrueBlue's discovery violations were willful and continued to be willful since the court's initial discovery orders were entered. The court further concluded that the discovery violations caused Marchel substantial prejudice in conducting discovery and in preparing for trial, despite the continuance granted earlier which reset trial from June until August 2018. The superior court awarded reasonable attorney fees and costs to Marchel in the amount of $93,638.50 in connection with its orders compelling discovery dated September 27, 2017, March 19, 2018, and April 11, 2018.

The superior court concluded that a fair trial could not be held as scheduled on August 6, 2018, because of TrueBlue's violations and because Marchel was deprived of evidence and personnel policies that were material or central to the remaining issues to be tried related to her defense and claims. The court considered all discovery sanctions authorized by CR 26 and CR 37(b)(2) as well as those argued by the parties, considered that lesser sanctions had already been imposed, and concluded that harsher sanctions under CR 37(b)(2) were now required:

11

1. The sanction of monetary damages alone was considered by the [c]ourt. Such [a] sanction in the typical case serves the purposes of compensation but does not accomplish that end here where [Marchel is] already entitled to [her] attorneys' fees and costs incurred in obtaining partial summary judgment on the merits of [TrueBlue's] breach of contract claim and [Marchel's] [MWA] counterclaim. . . . Moreover, in this case monetary sanctions do not adequately punish, deter[,] or educate. Despite repeated orders to compel adherence to discovery requests, [TrueBlue] continued their tactics of obstruction.

2. The sanction of striking witnesses or limiting evidence was considered by the [c]ourt but the discovery violations would still prejudice [Marchel] in [her] ability to defend against [TrueBlue's] trade secrets misappropriation claim and to meet their burden of proving the elements of [her] causes of action, including damages.

3. The sanction of taking only certain facts as established was also considered by this [c]ourt. That would serve some of the purposes of imposing sanctions but would still prejudice [Marchel] in the same manner and/or would be the equivalent of deeming [Marchel's] allegations admitted and striking all of [TrueBlue's] allegations and defenses, if any, on liability and damages.

4. The sanction of default serves all of the purposes of imposing sanctions for the discovery violations which occurred in this case.

5. Lesser sanctions, including limiting cross examination of witnesses and/or not allowing arguments by counsel, would similarly allow [TrueBlue] to profit from their own wrongs because [Marchel] would still be prejudiced in [her] preparation and trial of this case.

6. Given that any lesser sanction would be inadequate to satisfy the goals of discovery sanctions set forth in *Fisons*[5] and *Magana*,[6] the sanction which this [c]ourt, in its discretion, imposes is:

    a. [TrueBlue's] claims under the Uniform Trade Secrets Act are dismissed;

    b. [TrueBlue's] affirmative defenses to all remaining counterclaims are dismissed;

    c. [Marchel's] claims under the Washington Law Against Discrimination are deemed admitted;

---

[5] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993).

[6] *Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009).

> d. [Marchel's] claim for damages under the Minimum Wage Act, the WLAD, and for damages incurred as the direct and proximate result of a wrongfully issued injunction are deemed admitted; and
>
> e. [AnyTime Labor-Seattle, LLC's] claims for damages incurred as the direct and proximate result of a wrongfully issued injunction are deemed admitted.
>
> 7. It is further ordered that [Marchel's] attorneys' fees and costs awarded pursuant to CR 37(a) on September 27, 2017, March 19, 2018, April 11, 2018, and May 10, 2018, totaling $93,638.50 shall be paid by [TrueBlue] no later than August 15, 2018.

CP at 2819-21. This order resolved the WLAD claim in its entirety and it resolved the amount of damages for the MWA claims.

The superior court entered judgment in the amount of $902,475.29 against TrueBlue and in favor of Marchel. The judgment was not broken down specifically between damages for the MWA claim and the injunction, but it included $486,736.08 in damages (for the MWA claim and injunction), $84,538.16 in interest, $300,778.30 in attorney fees, and $30,422.75 in costs. The court also entered judgment against TrueBlue in favor of LaborMax in the amount of $216,423.00 for the injunction.

TrueBlue appeals the superior court's summary judgment orders and the court's order imposing CR 37 sanctions.

ANALYSIS

I. PARTIAL SUMMARY JUDGMENT ORDERS

A. SUMMARY JUDGMENT STANDARD

We review a superior court's decision on a summary judgment motion de novo. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017). Summary judgment is appropriate if there are no genuine issues of material fact and the moving

13

party is entitled to judgment as a matter of law. *Zonnebloem*, 200 Wn. App. at 182; CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue. *Zonnebloem*, 200 Wn. App. at 182-83. We review all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Zonnebloem*, 200 Wn. App. at 182.

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Zonnebloem*, 200 Wn. App. at 183. Once a moving defendant shows that there is an absence of evidence to support the plaintiff's case, the burden shifts to the plaintiff to present specific facts that rebut the defendant's contentions and show a genuine issue of material fact. *Zonnebloem*, 200 Wn. App. at 183.

B. CLASSIFICATION AS EXEMPT FROM OVERTIME

TrueBlue first argues that the superior court erred by ruling that TrueBlue misclassified Marchel as overtime exempt under the MWA. In her counterclaim, Marchel alleged that TrueBlue violated the MWA by classifying her as an exempt employee and failing to pay her overtime during her employment. We hold that because there are genuine issues of material fact on this issue, the court erred by granting Marchel partial summary judgment.

RCW 49.46.130(1) and (2)(a) provide that an employer must pay overtime for work over 40 hours per week unless the employee is exempt under RCW 49.46.010(3). RCW 49.46.010(3)(c)[7] exempts persons employed in a "bona fide . . . administrative . . . capacity."

---

[7] The legislature amended RCW 49.46.010 in 2020. LAWS OF 2020, ch. 212 § 3. Because these amendments are not relevant here, we cite to the current version of this statute.

To show that Marchel was employed in an exempt administrative capacity instead of an nonexempt sales position, TrueBlue had to prove that (1) Marchel was compensated on a salary basis of not less than $250 per week; (2) her "'primary duty consist[ed] of the performance of office or nonmanual work directly related to management policies or general business operations of [her] employer or [her] employer's customers;'" and (3) her work "'include[d] work requiring the exercise of discretion and independent judgment.'" *Fiore v. PPG Indus.*, 169 Wn. App. 325, 334, 279 P.3d 972 (2012) (quoting WAC 296-128-520(4)(b)).

The first element is undisputed and is met. But in order to establish that Marchel was properly classified as an exempt employee, TrueBlue must also show that Marchel's position as a branch manager met both the second and third requirements. *Fiore*, 169 Wn. App. at 335.

As to the second element, the question of an employee's primary job duty is "determined based upon all of the facts in a particular case." *Fiore*, 169 Wn. App. at 335. "[A]lthough not always dispositive, basing the determination on that work performed by the employee for 50% of his or her time is a 'good rule of thumb.'" *Fiore*, 169 Wn. App. at 335 (quoting Wash. Dep't of Labor & Indus., Admin. Policy ES.A.9.4(5), at 3 (issued Jun. 24, 2005)).

Here, Marchel claimed that TrueBlue required her to "[spend] 75% of [the] day in the marketplace selling." CP at 1354. However, the 75% of an employee's time factor is not determinative here, particularly given the specific facts of this case. Shevchenko, Marchel's former supervisor at TrueBlue, contradicted her claim. He explained in his declaration that Marchel, as branch manager, was primarily responsible for developing local policies and growth strategies while running the daily operations of the branch and that she had broad discretion in her

15

job to provide sales support for TrueBlue. Based on this conflicting evidence, there is a genuine issue of material fact as to the second element.

As to the third element, the exercise of discretion and sound judgment "involves 'the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.'" *Fiore*, 169 Wn. App. at 342 (quoting Admin. Policy ES.A.9.4(10), at 5). "[I]t 'implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.'" *Fiore*, 169 Wn. App. at 342 (quoting Admin. Policy ES.A.9.4(10), at 5). "'Significant matters' are 'the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects[,] financially or otherwise.'" *Fiore*, 169 Wn. App. at 342 (quoting Admin. Policy ES.A.9.4(11), at 8).

Here, Marchel claims that she had little discretion in her job. But TrueBlue presented evidence through Shevchenko that Marchel's work required her to exercise discretion as a branch manager. Shevchenko claimed that Marchel was in charge of the day-to-day operations, including planning long-term business and marketing strategies, serving as TrueBlue's representative to both clients and employees, researching new business contacts, and maintaining existing client relationships. Shevchenko said that Marchel had the discretion to run the branch as she thought best and she was responsible for basic recruiting, training, disciplining, and managing branch staff. Based on this conflicting evidence, there is a genuine issue of material fact as to the third element.

We must view the evidence, including reasonable inferences, in favor of TrueBlue. *Zonnebloem*, 200 Wn. App. at 182. Because there are genuine issues of material fact on the second

and third elements, we reverse the superior court's order granting Marchel partial summary judgment on her MWA claim.

C. BREACH OF NON-COMPETE AGREEMENT

TrueBlue next argues that the superior court erred by granting Marchel partial summary judgment on TrueBlue's breach of contract claim based on its ruling that TrueBlue breached its employment agreement by changing Marchel's compensation structure without adequate consideration. We hold that the court erred.

1. Legal Principles

Washington courts will enforce non-compete agreements that are reasonable and validly formed. *Labriola v. Pollard Group, Inc*., 152 Wn.2d 828, 833, 100 P.3d 791 (2004). Agreements signed at the time employment begins are generally considered valid, reasonable, and with sufficient consideration. *Labriola*, 152 Wn.2d at 834.

It is well-established that a bilateral contract cannot be modified without a subsequent meeting of the minds and exchange of new, independent consideration. *Labriola*, 152 Wn.2d at 834 ("Independent, additional, consideration is required for the valid formation of a modification or subsequent agreement."). In a bilateral contract, "[e]ach party is bound by his [or her] promise to the other." *Ebling v. Gove's Cove, Inc*., 34 Wn. App. 495, 499, 663 P.2d 132 (1983).

A material breach by one party can relieve the other party from enforcement of a contract. *224 Westlake, LLC v. Engstrom Prop., LLC*, 169 Wn. App. 700, 724, 281 P.3d 693 (2012). A material breach "substantially defeats [the] primary function of the contract." *Top Line Builders, Inc. v. Bovenkamp*, 179 Wn. App. 794, 808, 320 P.3d 130 (2014). The breach must be serious

enough to justify the other party in abandoning the contract. *224 Westlake*, 169 Wn. App. at 724. Materiality is a question of fact. *Top Line Builders*, 179 Wn. App. at 808.

2. TrueBlue's Alleged Breach

Here, Marchel's compensation structure consisted of a salary plus a bonus during her employment. It is undisputed that TrueBlue changed Marchel's bonus structure. However, the employment agreement that Marchel signed expressly stated that TrueBlue could change her compensation, including her bonus structure. The agreement stated in relevant part that it "may be modified by Labor Ready from time to time" and that "[i]f [e]mployee is eligible for a bonus under any such plan, [e]mployee understands and agrees that Labor Ready has the right to change or discontinue any bonus plan at any time." CP at 697.

Although Marchel objected to the change in her compensation package, she continued to work for TrueBlue and receive her base salary and a bonus. She did not abandon the contract, but continued to work under its modified terms. There is at least a question of material fact as to whether the consideration for TrueBlue's exercise of its contractual right to change Marchel's compensation structure was her continued receipt of compensation under the employment agreement.

As discussed above, we must view the evidence, including reasonable inferences, in favor of TrueBlue. *Zonnebloem*, 200 Wn. App. at 182. We conclude that there are genuine issues of material fact as to whether TrueBlue breached its employment agreement with Marchel.

3. Enforcement of Non-Compete Agreement

The superior court's granting Marchel partial summary judgment on TrueBlue's breach of contract claim was based on its ruling that, as a matter of law, TrueBlue breached the employment

contract. As a result, the court ruled that TrueBlue was precluded from enforcing the non-compete agreement against Marchel. Because that ruling was erroneous, the court erred in granting Marchel partial summary judgment on this claim.

Marchel claimed below that TrueBlue's breach of contract claim is precluded because the non-compete agreement is subject to a one year limitation period. Because the superior court dismissed this claim on summary judgment, the court did not address this issue. This issue must be addressed on remand.

Marchel argues that partial summary judgment still was appropriate because TrueBlue failed to establish the requirements for enforcing a non-compete agreement. We disagree. Courts will enforce non-compete agreements only if they are reasonable, and reasonableness is determined through application of a three-part test. *Emerick v. Cardiac Study Ctr., Inc.,* 170 Wn. App. 248, 254, 286 P.3d 689 (2012). The superior court did not address this issue. On remand, the court must undertake this analysis.

In addition, the superior court ruled that there were genuine issues of material fact as to whether the non-compete agreement was procedurally unconscionable or generally unconscionable. These issues also must be resolved on remand.

We reverse the superior court's grant to Marchel of partial summary judgment on TrueBlue's breach of contract claim and remand for further proceedings.

## II. CR 37 SANCTIONS

TrueBlue argues that the superior court erred by imposing CR 37(b)(2) sanctions because it applied the wrong legal standard for imposing sanctions, failed to enter specific *Burnet*[8] findings of prejudice, and its findings are not supported by substantial evidence. We disagree and hold that the court did not err by imposing CR 37 sanctions.

Even though we are remanding for further resolution of the merits, should Marchel ultimately prevail on the merits of her MWA claim and her breach of contract defense, the determination of those damages as part of the CR 37 sanctions would still apply. Additionally, all of the other aspects of the CR 37 sanctions will also apply.

### A. STANDARDS OF REVIEW

If a party fails to obey a discovery order, the superior court may "make such orders in regard to the failure as are just." CR 37(b)(2). The superior court has broad discretion as to the choice of sanctions for violation of a discovery order. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). We will not disturb the superior court's ruling on appeal absent a clear showing of an abuse of discretion. *Burnet*, 131 Wn.2d at 494.

Discovery sanctions serve to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the wrong. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993). The superior court should impose the least severe sanction that is adequate to serve the sanction's particular purpose but is not so minimal as to undermine the purpose of discovery. *Fisons*, 122 Wn.2d at 355-56.

---

[8] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

CR 37(b) presents a nonexclusive list of possible sanctions, including designating facts as established, striking claims or defenses, limiting or prohibiting evidence, default, and contempt. If a superior court imposes one of the harsher remedies under CR 37(b), then "the record must clearly show [that] (1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the [superior] court explicitly considered whether a lesser sanction would have sufficed." *Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009) (citing *Burnet*, 131 Wn.2d at 494).

Under *Magana*, the test for prejudice looks to whether the opposing party was substantially prejudiced in preparing for trial. 167 Wn.2d at 589. When reviewing a court's findings of prejudice, we do not substitute our discretion for that of the superior court. *Magana*, 167 Wn.2d at 590.

We review the imposition of CR 37(b) sanctions for an abuse of discretion. *Magana*, 167 Wn.2d at 582. We normally give deference to the superior court's sanction orders. *Magana*, 167 Wn.2d at 583. We will disturb a superior court's sanction only if it is clearly unsupported by the record. *Magana*, 167 Wn.2d at 583. A superior court abuses its discretion when its order is manifestly unreasonable, is based on untenable grounds, or is based on an erroneous view of the law. *Fisons*, 122 Wn.2d at 339.

B. *BURNET* FINDINGS

Here, the superior court entered the following *Burnet* findings: (1) that True Blue willfully violated the court's discovery orders, (2) that Marchel was substantially prejudiced by TrueBlue's violations in her discovery and preparation for trial, and (3) the court considered whether lesser sanctions were appropriate under CR 37.

1. Willful Violation

TrueBlue argues that the superior court's findings of a willful violation are not supported by substantial evidence. We disagree.

In *Magana*, our Supreme Court stated that "[a] party's disregard of a court order without reasonable excuse or justification is deemed willful." 167 Wn.2d at 584. This rule previously had been recited in other cases. *See Rivers v. Wash. State Conference of Mason Contractors,* 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002).

TrueBlue argues that the Supreme Court adopted a new rule for willfulness in *Jones v. City of Seattle*, 179 Wn.2d 322, 314 P.3d 380 (2013). The court in *Jones* referenced the holding in *Magana* that "a party's failure to comply with a court order will be deemed willful if it occurs without reasonable justification." 179 Wn.2d at 345 (citing *Magana*, 167 Wn.2d at 584). But the court then stated that it more recently had noted that the "willfulness prong would serve no purpose 'if willfulness follows necessarily from the violation of a discovery order.'" *Jones*, 179 Wn.2d at 345 (quoting *Blair v. TA–Seattle East No. 176,* 171 Wn.2d 342, 350 n.3, 254 P.3d 797 (2011)). The court stated, "Something more is needed." *Jones*, 179 Wn.2d at 345.

We disagree that *Jones* repudiated the *Magana* rule for willfulness in this brief comment. And the court in *Jones* did not in fact apply this "something more" rule. *See Jones*, 179 Wn.2d at 345. In that case, the court reversed because the superior court did not explicitly or implicitly conduct a willfulness inquiry at all. *Jones*, 179 Wn.2d at 345.

Here, the superior court found that TrueBlue willfully violated the discovery rules and the court's discovery orders. The court found that "a pattern of intentional discovery abuse has gone on throughout this litigation that both pre-dates and post-dates the Rocke Law Group's

22

involvement as [TrueBlue's] counsel. [TrueBlue] engaged in willful and deliberate obstruction of the discovery process." CP at 2815. The court further found that TrueBlue offered no reasonable justification or excuse for their failure to respond to Marchel's discovery.

Marchel propounded two sets of discovery requests to TrueBlue in January 2017 and January 2018, neither of which TrueBlue timely or fully responded to at any point. TrueBlue admits that its responses to both of Marchel's discovery requests were not timely as required under CR 26 and were not complete responses as ordered repeatedly by the superior court. The record supports a finding that TrueBlue's disregard of the court's orders was without justification or excuse. Thus, we hold that the superior court correctly found that TrueBlue's violations of its discovery orders were willful and that substantial evidence supports this finding.

2. Prejudice

The superior court also found that Marchel was substantially prejudiced in preparing for trial as a result of TrueBlue's repeated discovery violations. TrueBlue argues that this finding is not supported by substantial evidence. We disagree.

Under *Magana*, the test for prejudice looks to whether the opposing party was prejudiced in preparing for trial. *Magana*, 167 Wn.2d at 589 (citing *Burnet*, 131 Wn.2d at 494; *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 325-26, 54 P.3d 665 (2002)). When reviewing a court's findings of prejudice, we do not substitute our discretion for that of the superior court. *Magana*, 167 Wn.2d at 590.

Here, TrueBlue challenges the superior court's finding that "[TrueBlue] engaged in willful and deliberate obstruction of the discovery process, and this has prejudiced [Marchel's] ability to prepare for trial." TrueBlue argues that this is not a specific enough finding of prejudice to warrant

harsher sanctions imposed here, damages awarded to Marchel and LaborMax. CP at 2815. TrueBlue maintains that Marchel was not substantially prejudiced from preparing for trial, because in April 2018, she obtained copies of a 2010 employee handbook, a confidentiality policy, a personal electronic device policy, and an employee separation guide. TrueBlue claims that producing these documents several months before trial resolves any prejudice concerns.

TrueBlue ignores the fact that this crucial evidence was not produced until 224 days after the superior court ordered their production and only after TrueBlue's CR 30(b)(6) designated witness revealed their existence during his April 2018 deposition. Further, here, like *Magana*, the withheld documents were crucial for trial preparation. TrueBlue withheld these crucial documents until April 2018, a few months before trial, well past the discovery deadline of September 17, 2017, and 224 days after the court ordered it to be produced. We hold that the superior court did not abuse its discretion by finding that TrueBlue's discovery violations substantially prejudiced Marchel's preparation for trial and this finding is supported by substantial evidence.

3. Lesser Sanctions

TrueBlue argues that the superior court erred because it did not consider the least severe sanctions to adequately serve the purpose before it imposed harsher sanctions under CR 37(b). We disagree and hold that the court explicitly considered lesser sanctions before imposing harsher sanctions under CR 37(b).

A court should issue sanctions appropriate to advancing the purposes of discovery. *Burnet*, 132 Wn.2d at 497. The court has broad authority under CR 26(g) to sanction a party for discovery violations; however, repeated discovery violations are addressed under CR 37. *Fisons*, 122 Wn.2d at 340. The discovery sanctions should be proportional to the discovery violation and the

circumstances of the case. *Burnet*, 131 Wn.2d at 496-97. The least severe sanction that will be adequate to serve the purpose of the particular sanction should insure that the wrongdoer does not profit from the wrong. *Fisons*, 122 Wn.2d at 355-56. "'Before resorting to the sanction of dismissal, the [superior] court must clearly indicate on the record that it has considered less harsh sanctions under CR 37. Its failure to do so constitutes an abuse of discretion.'" *Magana*, 167 Wn.2d at 590 (quoting *Rivers*, 145 Wn.2d at 696). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds, or bases its ruling on an erroneous view of the law. *Fisons*, 122 Wn.2d at 339.

Here, before imposing harsher sanctions under CR 37, the court stated, "I've tried sanctions. I've tried monetary. I've ordered discovery. I've ruled that discovery can proceed with one party but not the other. Certainly, recently there's been a change [by TrueBlue], but now we're seeing all these documents come in from a withholding that has spanned over a year now."[9] Verbatim Report of Proceedings (VRP) (May 10, 2018) at 122-23. The court also considered that TrueBlue's responses after the order to compel could not cure the prejudice of lost time and that the attorney fees it awarded were "meaningless" as a sanction because the fees are owed under the employment agreement and the wage claims which were already resolved. VRP (May 10, 2018) at 121. The superior court explicitly considered lesser sanctions under CR 37 when it found that "[l]esser sanctions, including limiting cross examination of witnesses and/or not allowing arguments by counsel, would . . . allow [TrueBlue] to profit from their own wrongs." CP at 2820. Substantial evidence supports this finding.

---

[9] The superior court's reference was to its April 11, 2018 order for TrueBlue to produce additional documents by April 12, and TrueBlue's preparations to produce an additional 16,000 documents.

The superior court also found that limiting TrueBlue's presentation of evidence would not alleviate the substantial prejudice to Marchel in her preparation for trial of this case despite a trial continuance having been ordered. TrueBlue's nonproduction hindered Marchel's ability to defend against TrueBlue's trade secrets misappropriation claim and meet her burden of proving the elements of her causes of action, including damages. Restricting TrueBlue's evidence would not remedy this harm.

At the time the superior court ordered harsher sanctions, the focus of the discovery obstruction had moved beyond compliance with the orders to comply and on to punishment and deterrence. Thus, we hold that the court considered lesser sanctions and it did not abuse its discretion by imposing harsher sanctions under CR 37(b).

### III. JURY TRIAL ON DAMAGES

TrueBlue argues that the superior court violated its constitutional right to a jury trial by imposing CR 37(b) liability and awarding Marchel and LaborMax damages as a sanction rather than deeming that their claims were established. TrueBlue requests a remand for a jury to determine the amount of damages to which Marchel and LaborMax are entitled. We disagree and hold that once the court made the required *Burnett* findings and imposed CR 37 liability on TrueBlue, due process was satisfied. Thus, TrueBlue is not entitled to a jury trial on the damages awarded to Marchel and LaborMax as a sanction.

In *Magana*, the court referenced the right to a jury trial: "'The right of trial by jury shall remain inviolate.' Const. art. I, § 21; *see also* CR 38. 'Due process is satisfied, however, if, before entering a default judgment or dismissing a claim or defense, the trial court concludes that there was a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices

the opponent's ability to prepare for trial.'" *Magana*, 167 Wn.2d at 591 (internal quotation marks omitted) (quoting *Behr*, 113 Wn. App. at 330).

No case has addressed whether a defendant is entitled to a jury trial on damages after a court has imposed CR 37(b) liability for the plaintiff's claims as a sanction. However, TrueBlue does not challenge the superior court's ability to essentially enter a default judgment on liability, which also would infringe on the right to a jury trial. TrueBlue does not explain why a damages award is any different.

Here as discussed above, the superior court made the required *Burnet* findings, addressing willfulness, substantial prejudice in preparing for trial, and explicit consideration of lesser sanctions before imposing harsher sanctions under CR 37(b). Under *Magana*, due process was satisfied. 167 Wn.2d at 591. Thus, we hold that TrueBlue's argument fails, and we affirm the CR 37 sanctions order.

## ATTORNEY FEES

Marchel requests an award of reasonable appellate attorney fees and costs. Under RAP 18.1, the prevailing party is entitled to attorney fees and costs on appeal when applicable law authorizes the award. *McGuire v. Bates*, 169 Wn.2d 185, 191, 234 P.3d 205 (2010).

Marchel is not the prevailing party on her MWA claim or on TrueBlue's breach of contract claim, and therefore we deny her request for an award of attorney fees on appeal regarding those claims. Marchel did prevail regarding the imposition of CR 37 sanctions, but she does not argue that she is entitled to attorney fees on that issue. Therefore, we do not award attorney fees on appeal regarding that issue.

CONCLUSION

We hold that the superior court erred by (1) granting Marchel partial summary judgment on her MWA claim because there are genuine issues of material fact regarding her classification, and (2) granting Marchel partial summary judgment on TrueBlue's breach of contract claim because there are genuine issues of material fact regarding whether TrueBlue breached its contract with Marcel by changing her compensation structure without adequate compensation. We also hold that the superior court did not err by imposing CR 37 sanctions and entering judgment against TrueBlue, and the court did not violate TrueBlue's right to a jury trial by imposing CR 37 liability against TrueBlue and awarding damages to Marchel and LaborMax as a sanction. We deny Marchel an award of appellate fees and costs.

Even though we are remanding for further resolution of the merits, should Marchel ultimately prevail on the merits of her MWA claim and her breach of contract defense, the determination of those damages as part of the CR 37 sanctions would still apply. Additionally, all of the other aspects of the CR 37 sanctions will also apply.

We reverse the partial summary judgment orders and remand for further proceedings, including a determination of whether the non-compete agreement was subject to a one year limitations period and whether TrueBlue's non-compete agreement was valid and enforceable. We affirm the CR 37 sanctions order and the damages awarded to Marchel and LaborMax as a sanction. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

No. 52665-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, A.C.J.

We concur:

Maxa, J.

Glasgow, J.