# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SCARSELLA BROTHERS, INC., a Washington Corporation, | No. 78543-5-I |
| Appellant/ Cross-Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| FLATIRON CONSTRUCTORS, INC., a Delaware Corporation; WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; LIBERTY MUTUAL INSURANCE COMPANY (Bond No. 015035206); TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (Bond No. 105688202); FIDELITY AND DEPOSIT COMPANY OF MARYLAND/ZURICH AMERICAN INSURANCE COMPANY (Bond No. 9070286); FEDERAL INSURANCE COMPANY (Bond No. 82292503), THE CONTINENTAL INSURANCE COMPANY (Bond No. 929539824), and XL SPECIALTY INSURANCE COMPANY (Bond No. SUR7401972), | |
| Respondent/ Cross-Appellant. | |

LEACH, J. — The Washington State Department of Transportation (WSDOT) contracted with Flatiron Constructors, Inc. (Flatiron) to be the prime contractor on a

Citations and pin cites are based on the Westlaw online version of the cited material.

"design-build project" known as the I-405 Bellevue to Lynnwood Project. Flatiron subcontracted with Scarsella Brothers, Inc. (Scarsella) for earthwork. Flatiron and Scarsella both appeal the trial court's decision made after a lengthy bench trial. Scarsella challenges the trial court decisions that the prime contract notice and claim provisions applied to its claims, the denial of its claims that Flatiron waived enforcement and is estopped from enforcing the notice and claim provisions, and the denial of its claims for quantum meruit recovery, foreclosure of its retainage lien, attorney fees and costs, and for prejudgment interest. Flatiron challenges the trial court's decision that it breached the Scarsella subcontract and awarded judgment against its payment bond.

We affirm.

## FACTS

### The Project and Parties

On January 11, 2012, WSDOT contracted with Flatiron to serve as the prime contractor on a design-build project to widen and add express toll lanes to a segment of I-405 from Bellevue to Lynnwood. On July 21, 2012, Flatiron subcontracted with Scarsella to perform earthwork, retaining wall installation, and drainage construction. The value of the subcontract was $14,865,476.68. The subcontract identifies three categories of work: (1) bid item work; (2) extra work; and (3) force account work.

Sureties on Flatiron's "Contract Bond and Retainage Bond" include Liberty Mutual Insurance Company, Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland/Zurich American Insurance Company, Federal Insurance Company, The Continental Insurance Company, and XL Specialty

Insurance Company. Liberty Mutual Insurance Company is the surety on Scarsella's "Performance and Payment Bonds."

Payment Procedures

Flatiron required Scarsella to submit monthly "pay applications" with supporting documentation showing the work it performed for the month. From August 2012, to January 2015, Flatiron reviewed each pay application, met with Scarsella to discuss discrepancies, negotiated payment for quantities and extra work using force account worksheets, and would issue a determination about Scarsella's work and payment. During that time, Flatiron's engineers reviewed the pay estimates and verified Scarsella's work. Flatiron used Scarsella's pay applications to prepare its own monthly pay applications to WSDOT. After WSDOT paid Flatiron, Flatiron paid Scarsella a "progress payment."

Payment Dispute

In November 2014, Flatiron exercised its subcontract right to withhold Scarsella's payment. Flatiron claimed Scarsella did not document its work, follow required procedures, maintain documentation, substantiate force account billings, and substantiate pay applications as the subcontract required. Flatiron also claimed Scarsella caused project delays in breach of the subcontract. Before withholding payments, Flatiron raised these issues with Scarsella. Scarsella gave Flatiron some of the required documentation but not all. Flatiron told Scarsella it intended to pursue damages and intended to withhold payments because Scarsella did not provide full documentation.

For Scarsella's work on the project, Flatiron approved a total value of $17,788,284.60. Flatiron withheld $1,849,196.55 for bid item work; $194,150.01 for non-force account extra work, and $709,362.35 for force account work.

Procedural History

On August 14, 2015, Scarsella delivered a "Notice of Claim Lien" to WSDOT, Flatiron, and the sureties. Scarsella claimed $5,680,598.94 plus fees and costs.

On December 11, 2015, Scarsella sued Flatiron and the sureties. Scarsella claimed breach of contract, recovery against the payment bond, foreclosure on the lien against retainage, estoppel and waiver of prime contract provisions, breach of a covenant of good faith and fair dealing, and violation of RCW 39.76.011. Scarsella sought $12,135,173 plus prejudgment interest, attorney fees, and costs. Flatiron counterclaimed arguing Scarsella significantly delayed the completion of the project.

Trial occurred from July 5, 2017 to September 26, 2017. During trial, Flatiron acknowledged it withheld $2,731,437.97 in earned payments from Scarsella.

| Type of Work | Amount Withheld |
|---|---|
| Force account work | $709,362.35 |
| Non-force account extra work | $194,150.01 |
| Bid item work | $1,849,196.55 |
| Minus back charges | $(21,270.94) |
| **Total** | $2,731,437.97 |

On November 2, 2017, the trial court determined that subcontract section 2.6 authorized Flatiron to withhold payments, and Flatiron acted in good faith when it did so. The trial court decided Scarsella could not recover additional compensation for force account work and extra work because of its noncompliance with section 1-04.5(1) of the

4

Prime Contract. The trial court ordered Flatiron to pay Scarsella $2,731,437.97 for its work. It denied Scarsella's claims that Flatiron waived compliance with and was estopped from enforcing the prime contract notice and claim provisions. It denied Scarsella's claims against the retainage as premature. The trial court also found Scarsella's documentation inconsistent and unreliable, and that Scarsella did not substantiate its work and claims. The trial court denied Flatiron's claim that Scarsella caused substantial project delays.

On January 19, 2018, Scarsella and Flatiron independently filed requests for entry of judgment, attorney fees and costs, and prejudgment interest. On May 14, 2018, the trial court partially granted Scarsella's and Flatiron's requests.

Scarsella appeals and Flatiron cross-appeals.

## STANDARD OF REVIEW

We review a trial court's decision in a bench trial for whether substantial evidence supports the trial court's findings of fact and whether those findings support the court's conclusions of law.[1] Substantial evidence is evidence sufficient to persuade a fair-minded person of its truth.[2] We review questions of law and statutory interpretation de

---

[1] Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 243, 23 P.3d 520 (2001); Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006).

[2] Hegwine, 132 Wn. App. at 555-56.

novo.[3] So, we review a trial court's conclusions of law about contract interpretation de novo.[4]

ANALYSIS

Prime Contract Notice and Claim Provisions

Scarsella argues the prime contract notice and claim provisions do not apply to its claims for extra work. We disagree.

"If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract."[5] A prime contract incorporated by reference in a subcontract is binding on the subcontractor.[6]

The subcontract between Scarsella and Flatiron provides, "Subcontractor assumes toward Contractor all obligations that Contractor assumes toward Owner, insofar as applicable to the Work to be performed under this Subcontract."[7] As the subcontractor, Scarsella assumed toward Flatiron all obligations applicable to its work that Flatiron assumed under the prime contract toward WSDOT for Scarsella's work.

---

[3] In re Estate of Jones, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004); Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

[4] Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014); Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 425, 10 P.3d 417 (2000).

[5] Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 801, 225 P.3d 213 (2009).

[6] Washington State Major League Baseball Stadium Public Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 176 Wn.2d 502, 518, 296 P.3d 821 (2013).

[7] Subcontract Attachment B, Art. 1, § 1.6.

The prime contract also provides procedures for Flatiron to submit notices, claims, and protests to WSDOT:

> If in disagreement with anything required in a Change Order, or any other written order from the WSDOT Engineer, including any direction, instruction, interpretation, or determination by WSDOT, the Design-Builder shall:
>
> 1.  Immediately give a signed written notice of protest to WSDOT before doing the Work;
> 2.  Supplement the written protest within 30 Calendar Days with a written statement and supporting documents [. . .]; and
> 3.  If the protest is continuing, the information required above shall be supplemented monthly until the protest is resolved.

Because Scarsella assumed these same obligations toward Flatiron, Scarsella was required to comply with the prime contract's notice, claim, and protest provisions.

Next, Scarsella argues it did not waive certain claims when it did not follow the prime contract notice and claim provisions. We disagree.

Section 1-04.5 of the prime contract states, "By not protesting as this section provides, the Design-Builder also waives any additional entitlement and accepts from WSDOT any written order (including directions, instructions, interpretations, and determinations)."

In NOVA Contracting, Inc. v. City of Olympia, the Washington State Supreme Court upheld an identical protest provision.[8]  It determined the phrase "waives any additional entitlement" applies to "'all' claims related to the 'protested [w]ork'" including damages.[9]

---

[8] 191 Wn.2d 854, 865, 426 P.3d 685 (2018) (citing Mike M. Johnson, Inc. v. County of Spokane, 150 Wn.2d 375, 391, 78 P.3d 161 (2003)).

[9] NOVA Contracting, Inc., 191 Wn.2d at 866.

Because the subcontract incorporated the prime contract, Scarsella assumed toward Flatiron the same procedural obligations Flatiron owed WSDOT. So, under section 1-04.5 of the prime contract, Scarsella waived its right to protest if it did not comply with the prime contract's protest provisions.

Scarsella also argues the plain language of the subcontract replaces the prime contract notice and claim provisions because the subcontract provides a specific mechanism for calculating payments including payment for extra work.

The subcontract provides:

> Extra work without a Bid Item that is directed by Flatiron will be marked up cost plus 10%. Extra work directed by WSDOT will be marked up according to the Contract Documents. Extra work shall be authorized by Flatiron personnel and quantities shall be mutually agreed to prior to performing work.

But, this provision does not provide procedures for submitting notices, claims, and protests or describe the consequences of not following those procedures. It does not replace or supersede section 1-04.5 of the prime contract.

Scarsella also argues that Flatiron's breach of the subcontract bars it from enforcing its compliance with the prime contract provisions and that Flatiron prevented it from complying with the prime contract provisions. Scarsella's briefs do not cite to the record or otherwise demonstrate that it raised these issues. Because Scarsella did not raise them below, we do not consider them on appeal.[10]

---

[10] RAP 2.5(a).

## Waiver and Estoppel

Scarsella argues that Flatiron waived the prime contract provisions and is estopped from enforcing those provisions. We disagree. Flatiron did not waive the prime contract provisions and Scarsella did not establish the elements of estoppel.

## Waiver

"A party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct."[11] Waiver by conduct "requires unequivocal acts of conduct evidencing an intent to waive."[12] We enforce procedural contract requirements unless the benefiting party waives the contract provision or the parties agreed to modify the contract.[13]

Here, the trial court determined:

> 55. Under Attachment B, ¶ 2.6 of the Subcontract, Flatiron had the right to deduct from payment due to Scarsella any amounts owed by Scarsella to Flatiron, and Flatiron was entitled to withhold payment from Scarsella in an amount sufficient to protect Flatiron from any actual or anticipated loss due to Scarsella's alleged breach of the Subcontract.
>
> 56. Scarsella has not proved by a preponderance of the evidence that Flatiron expressly waived the rights and powers specified above to deduct amounts paid to which Scarsella was not entitled under the Subcontract.

Scarsella argues that Flatiron waived compliance when it "(1) directed, demanded, acknowledged, and approved Scarsella['s] work, both before and after

---

[11] Mike M. Johnson, Inc., 150 Wn.2d at 386 (citing Reynolds Metals Co. v. Electric Smith Const. & Equipment Co., 4 Wn. App. 695, 700, 483 P.2d 880 (1971)).

[12] 150 Wn.2d at 386 (citing Absher Const. Co. v. Kent School Dist. No. 415, 77 Wn. App. 137, 143, 890 P.2d 1071 (1995)).

[13] 150 Wn.2d at 386-87 (citing American Sheet Metal Works, Inc. v. Haynes, 67 Wn.2d 153, 157, 407 P.2d 429 (1965)).

ceasing payment to Scarsella, and (2) continued negotiating and agreeing to bid item quantities with Scarsella."

Subcontract section 2.6 permits Flatiron to withhold payments, and prime contract section 1-04.5(1) requires Flatiron and Scarsella to protest changes using the notice and claim procedures. The payment and notice and claim provisions are distinct contract provisions. Here, Flatiron's continued directions to Scarsella did not waive the prime contract provisions.

We affirm the trial court's finding that Flatiron did not waive the prime contract notice and claim provisions.

Estoppel

Scarsella argues that promissory estoppel prevents Flatiron from enforcing the prime contract provisions.[14] We disagree.

Promissory estoppel has five elements:

(1) a promise, (2) that promisor should reasonably expect to cause the promisee to change his position, and (3) actually causes the promisee to change position, (4) justifiably relying on the promise, (5) in such a manner that injustice can be avoided only by enforcement of the promise.[15]

---

[14] Scarsella also argues the trial court improperly shifted the burden of proof from Flatiron to Scarsella to show that Flatiron was estopped from withholding payment. Scarsella cites to Conclusion of Law number 56 and subcontract section 2.6 but does not cite to any legal authority. We decline to address this issue. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

[15] McCormick v. Lake Washington School Dist., 99 Wn. App 107, 117, 992 P.2d 511 (1999).

"A promise is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'"[16]

The subcontract provides that "[n]o progress payment to Subcontractor shall operate as an approval or acceptance of Work done," and "Contractor may deduct from any amounts due to Subcontractor…any sum or sums owed by Subcontractor to Contractor under this Subcontract." The contract also provides, "the parties shall not be bound by, or be liable for, any statements, representations, promises, or agreements not specifically set forth in this Subcontract."

The trial court determined that "Scarsella could not reasonably rely on Flatiron's prior progress payments as a promise not to deduct payment from future progress payments if it discovered that amounts paid were not actually due to Scarsella." And, "Scarsella could not justifiably rely on Flatiron's direction to perform extra work as a promise not to enforce [the notice and claim] and independent provisions."

The plain wording of the subcontract defeats Scarsella's claim that it reasonably relied on Flatiron's prior payments or direction to perform extra work as promises not to deduct payment and not to enforce the contract provisions. Because Flatiron made no promise, Scarsella's estoppel claim fails. We affirm the trial court's determination that Scarsella could not reasonably rely on Flatiron's prior progress payments as a promise

---

[16] Havens v. C & D Plastics, Inc., 124 Wn.2d 158, 172, 876 P.2d 435 (1994) (citing Restatement (Second) of Contracts § 2(1)).

not to deduct future progress payments and Flatiron was not estopped from deducting payments.

Breach of Subcontract

Flatiron argues the trial court should not have found that it breached the Scarsella subcontract and imposed liability against its payment bond because the trial court found that Flatiron withheld the payment from Scarsella in good faith.[17] Flatiron asserts the trial court improperly conflated the issues of (1) who was at fault for delaying the project and (2) Flatiron's right to withhold Scarsella's payments. We disagree.

"To prevail on a breach of contract claim, the plaintiff must show an agreement between the parties, a parties' duty under the agreement, and a breach of that duty."[18]

First, Flatiron argues substantial evidence does not support the trial court's finding that Flatiron breached the subcontract when it caused substantial project delays. Flatiron also argues it did not have a duty not to delay the project and instead had unilateral power to alter the project schedule.

Subcontract article 3, section 3.1 provides, "Contractor may at any time by written order of Contractor's authorized representative, and without notice to Subcontractor's sureties, make changes in, additions to and deletions from the Work, and Subcontractor shall promptly proceed with the Work so changed." And, section 3.2

---

[17] Flatiron also agues that even absent the subcontract's express withholding clause, it could withhold payments under the common law of contracts. Because Flatiron's withholding is separate from the issue of breach of contract, we decline to address it.

[18] Fidelity and Deposit Co. of Maryland v. Dally, 148 Wn. App. 739, 745, 201 P.3d 1040 (2009).

states that Scarsella waives its rights to assert claims against Flatiron for changes it makes when it provides Scarsella with five days notice. Under these subcontract provisions, Flatiron could breach the subcontract even if Scarsella waived its right to assert a claim for the breach.

The trial court found:

> Based on the evidence presented by both parties, the court finds that, to the extent there were delays, such delays more probably than not were caused by Flatiron's failure to prepare timely and accurate construction plans, and its failure to properly plan, supervise and direct the sequence of work on the Project, including Scarsella's work.

In its order granting in part Flatiron's request for fees and costs, the trial court clarified, "if it is not clear from the court's earlier findings and conclusions, the court now finds and concludes that Flatiron breached the parties' contract by causing the substantial project delays that were the factual basis of Flatiron's counterclaim against Scarsella."

Failure to timely and accurately prepare construction plans, supervise, and direct the project, are not delays permitted under subcontract article 3, section 3.1. So, we affirm the trial court's finding that Flatiron breached the subcontract.

Second, Flatiron argues it did not have a duty to pay Scarsella $2,731,437.97. So, its withholding of that amount was not a contract breach. Flatiron conceded that it owed Scarsella $2,731,437.97 and the trial court found that Flatiron withheld that payment in good faith. But, the trial court did not rely on Flatiron's withholding to support its finding that Flatiron breached the subcontract. It relied on Flatiron's failure to prove at trial the factual basis for the withholding to support its decision that Scarsella

13

was entitled to recover the withheld amount.  It relied on other conduct described above to support its finding that Flatiron breached the subcontract.  Scarsella's claims based on these breaches failed because it did not comply with procedural requirements for asserting these claims.

Third, Flatiron asserts that "[e]ven if the subcontract authorized Flatiron to withhold payment only in the event of Scarsella's actual breach, Flatiron's withholding would not constitute breach because Scarsella *was* in actual breach" when it did not fulfill its scheduling and documentation obligations.  But, the trial court found Flatiron did not meet its burden of proving Scarsella caused the delays.  So, this claim is without merit.  Substantial evidence supports the trial court's finding that Flatiron breached the subcontract.

## Quantum Meruit Recovery

Scarsella argues the trial court incorrectly denied its claim for quantum meruit recovery because (1) Flatiron used Scarsella to perform work outside the scope of the subcontract; (2) the work was not within the method and manner contemplated by the parties; (3) the trial court incorrectly applied the force majeure standard; and (4) the trial court incorrectly determined the prime contract notice and claim provisions barred quantum meruit recovery.  We disagree.

"Quantum meruit is an appropriate basis for recovery when substantial changes occur which are not covered by the contract and are not within the contemplation of the parties, and the effect of such changes is to require extra work or to cause substantial

loss to the contractor."[19]  Quantum meruit is a mixed question of fact and law: Does the contract indicate the parties contemplated the changed conditions?[20]  If the "contract unambiguously contemplates the changed conditions," the complaining party is not entitled to any quantum meruit recovery.[21]  If the contract is ambiguous, "issues of fact would exist, and resolution of the question would be for the trier of fact."[22]  Recovery is available when neither party could have reasonably anticipated the changed condition.[23]

In General Construction Company v. Public Utility District No. 2 of Grant County, we determined for work within the scope of a contract, a party must comply with the terms of the contract unless there is evidence the complaining party waived compliance with the contract's notice and claim requirements.[24]  Notice and claim provisions are valid unless there is "unequivocal evidence of an intent to waive" the protection.[25]  "For work outside of the contract, and changed work within the scope of the contract where [the party] satisfied the contractual notice and claim provisions, quantum meruit applies."[26]

First, Scarsella argues it is entitled to quantum meruit recovery because Flatiron directed it to perform work outside the scope of the subcontract.  Flatiron argues

---

[19] Hensel Phelps Const. Co. v. King County, 57 Wn. App. 170, 174, 787 P.2d 58 (1990).
[20] Hensel, 57 Wn. App. at 175-76.
[21] Hensel, 57 Wn. App. at 176.
[22] Hensel, 57 Wn. App. at 176.
[23] Basin Paving Co. v. Mike M. Johnson, Inc., 107 Wn. App. 61, 65, 27 P.3d 609 (2001), review denied, 145 Wn.2d 1018 (2002).
[24] 195 Wn. App. 698, 700, 709-10, 380 P.3d 636 (2016).
[25] General Construction Company, 195 Wn. App. at 709 (citing Mike M. Johnson, Inc. v. County of Spokane, 150 Wn.2d 375, 391-92, 78 P.3d 161 (2003)).
[26] 195 Wn. App. at 709-10.

Scarsella cannot recover quantum meruit because the subcontract expressly included provisions for directing, authorizing, and compensating extra work.[27] The trial court determined the subcontract contemplated "extra work outside the scope of the bid items" and "specifies the measurement of payment for all such work." The subcontract states, "For work outside previously agreed upon the Subcontractor shall notify Contractor and agree upon quantities and scope before performing work." The price for extra work is marked up cost plus 10 percent. Because the contract unambiguously contemplates additional work, we affirm the trial court's decision not to award quantum meruit recovery.

Second, Scarsella argues it is entitled to recovery because the work did not proceed in the method and manner contemplated by the parties. The trial court determined Scarsella did not prove there were substantial changes that neither party could reasonably anticipate. Article 3 of the subcontract discusses changes and delays. In order to recover for defects in specifications, differing conditions, and delays, Scarsella was required to provide Flatiron with a written claim or else it would waive recovery. Because the contract reasonably contemplated changes, we agree with the trial court that Scarsella did not prove it could not reasonably anticipate the delays that affected the method and manner of the work.

Third, Scarsella asserts the trial court improperly applied the force majeure standard rather than the quantum meruit standard. The trial court stated, "I think

---

[27] Flatiron argues this court rejected an analogous argument in Hensel Phelps Const. Co. v. King County, 57 Wn. App. 170, 174, 787 P.2d 58 (1990).

quantum meruit might be applicable had we, for example, had a giant earthquake that created crevices and cracks and chasms across the freeway, or if there had been some totally unforeseen disaster that nobody had planned for." But, the trial court did not actually apply a force majeure standard. The trial court continued to explain the "extraordinary amount of delay" and "huge number of change orders" were not substantial changes not contemplated by the subcontract. Because the trial court properly applied the quantum meruit standard, Scarsella's argument fails.

Fourth, Scarsella asserts the trial court incorrectly determined the prime contract notice and claim provisions barred quantum meruit recovery. Flatiron asserts the trial court correctly determined that Scarsella's non-compliance with the subcontract's provisions bars it from quantum meriut recovery. The trial court denied Scarsella's request for quantum meruit recovery for work it performed but did not invoice before January 20, 2015. The trial court determined that when Scarsella did not comply with the provisions, it waived its rights to bring a claim. And, because it waived its rights, the trial court determined that Scarsella could not bring a claim for quantum meruit recovery. We agree and affirm the trial court's determination that Scarsella was not entitled to quantum meruit recovery.

### Lien on Retainage

Scarsella argues the trial court should have allowed its claim under RCW 60.28 for recovery against the contract retainage held by WSDOT. We disagree.

RCW 60.28.030 provides that after a party files a claim against the reserve fund, it has four months to bring an action to foreclose a lien on retainage.

RCW 60.28.011(1)(a) provides that contract retainage may not exceed five percent. Here, the subcontract's retainage provision "provides that Flatiron may withhold 5 percent of all progress payments to Scarsella as retainage." RCW 60.28.011(3)(a)(b) and the prime contract provide that within 60 days of the project's final completion, the public body WSDOT must release the retainage. The subcontract provides that retainage is due "upon acceptance of the work by WSDOT," which occurs after the project's final completion.

"[P]arties may contractually select as the date of completion of the work either the date of substantial completion or the date of final completion."[28] "Unless otherwise defined by the contract to mean 'final completion[,]' the date on which the work is 100 [percent] complete <u>'completion' ordinarily is understood to mean 'substantial completion'</u> - the date on which all material elements of the work are sufficiently complete in conformance with the contract so that the owner can use the work for its intended purpose."[29]

The trial court found the project was substantially completed by October 31, 2015, but the contract date of completion had not arrived by the time of trial. It determined that "[b]ased on the evidence presented at trial, it [wa]s not possible for the court to reach a conclusion as to whether or when the retainage will be due to Scarsella." It explained,

> I'm assuming that the retainage will be paid when the time comes, but I don't have enough evidence, and the project had not been completed by

---

[28] <u>State Construction, Inc. v. City of Sammamish</u>, 11 Wn. App. 2d 892, 911, 457 P.3d 1194 (2020).

[29] <u>State Construction</u>, 11 Wn. App. 2d at 911.

the time of trial, at least not so far as I was told.  So it would have been premature to rule on the retainage claim.

It determined because the date of completion had not arrived by the time of trial, Scarsella's claim for foreclosure of the lien on retainage was premature.

We agree.  Because Scarsella prematurely asserted its claim, we affirm the trial court's denial of this claim.[30]

## Prevailing Party

Scarsella and Flatiron request attorney fees and costs under various statutes.[31] Their competing claims require determining whether either party is the prevailing party. None of the statutes relied on define "prevailing party."  So, we must consider "case law governing the determination of a prevailing party with respect to other statutes governing attorney fees and costs."[32]

"In Washington, the prevailing party is the one who receives judgment in that party's favor."[33]  "A party need not recover its entire claim in order to be considered the prevailing party."[34]  "However. . . where both parties prevail on major issues, neither is

---

[30] Flatiron argues the absence of a finding on the issue of retainage is a presumptive negative finding on that issue under Taplett v. Khela, 60 Wn. App. 751, 759, 807 P.2d 885 (1991).  Because the issue was premature, we do not reach Flatiron's claim.

[31] RCW 60.28.030, RCW 39.08.030, RCW 39.04.250, RCW 39.76.040, RCW 39.76.011.

[32] In re Marriage of Nelson, 62 Wn. App. 515, 518-19, 814 P.2d 1208, 1211 (1991).

[33] Sardam v. Morford, 51 Wn. App. 908, 911, 756 P.2d 174 (1988) (quoting Blair v. Washington State University, 108 Wn.2d 558, 571, 740 P.2d 1379 (1987)).

[34] Silverdale Hotel Associates v. Lomas & Nettleton Co., 36 Wn. App. 762, 774, 677 P.2d 773 (1984).

19

entitled to attorney fees."[35]  And, under RCW 4.84.330, where each party prevails on a major issue, "there is no 'prevailing party.'"[36]

In re Marriage of Nelson provides that because one party properly received an award of back child support under RCW 26.18.160, that party prevailed over the other party.[37]  In Sardam v. Morford, the trial court concluded that because neither party was the prevailing party, it would not award attorney fees under a landlord-tenant statute.[38] Division III of this court affirmed the trial court's conclusion because it "would be inequitable to award substantial fees" where both parties successfully defended against each other's major claims.[39]

In Crest Inc. v. Costco Wholesale Corp., we explained that under a contractual provision, rather than a statutory provision,

> [I]f neither party wholly prevails, . . . then the party who substantially prevails is the prevailing party. . . When there are several conflicting claims at issue, a defendant is awarded attorney fees for those claims it successfully defends, and plaintiff is awarded attorney fees for those claims upon which it prevails, and the awards should be the offset.[40]

Here, the trial court determined that "Scarsella and Flatiron each prevailed on major issues," but "[n]either party prevailed. . . on its own respective claims."  So, neither was the "prevailing party."

---

[35] Sardam, 51 Wn. App. at 911.
[36] Tallman v. Durussel, 44 Wn. App. 181, 990, 721 P.2d 985 (1986); Rowe v. Floyd, 29 Wn. App. 532, 535-36, 629 P.2d 925 (1981).
[37] 62 Wn. App. at 518-19.
[38] 51 Wn. App. at 910 (citing RCW 59.18.290, RCW 4.84.330).
[39] Sardam, 51 Wn. App. at 911.
[40] 128 Wn. App. 760, 772, 115 P.3d 349 (2005).

Scarsella argues the trial court incorrectly relied on <u>Sardam</u> in finding it was not the prevailing party.[41] Flatiron and the sureties argue the trial court properly referenced <u>Sardam</u> to explain how it would avoid inequitable results by denying attorney fees where neither party was the prevailing party.

Using the approach where each party prevails on a major issue, "there is no 'prevailing party,'"[42] neither Scarsella nor Flatiron is the prevailing party. The trial court determined that Scarsella failed on its claims for breach of contract, additional compensation, quantum meruit, retainage, waiver and estoppel, breach of good faith and fair dealing, and violation of payment statutes. It determined Scarsella was entitled to labor and material payment bonds totaling $2,731,437.97 because of Flatiron's concession. It also determined Flatiron failed on its claims for damages for breach of contract and performance bonds.

Scarsella argues the $2,731,437.97 award against Flatiron's labor and material payment bonds make it the "prevailing party."

The trial court disagreed,

> Even though Flatiron conceded at trial that Scarsella had earned $2,731.437.97 more than Flatiron had paid Scarsella, Flatiron's concession does not allow Scarsella to request an award of attorneys' fees incurred in recovering that amount pursuant to RCW 39.04.250 or RCW 39.76.040, because Flatiron withheld that sum from Scarsella in good faith.
>
> Based upon the trial court record, the court finds and concludes that neither Scarsella nor Flatiron is the "prevailing party."

---

[41] 51 Wn. App. 908, 911, 756 P.2d 174 (1988).
[42] <u>Tallman v. Durussel</u>, 44 Wn. App. 181, 990, 721 P.2d 985 (1986); <u>Rowe v. Floyd</u>, 29 Wn. App. 532, 535-36, 629 P.2d 925 (1981).

21

We agree with the trial court. Because the labor and material payment bonds issue was not a "major issue" in the case, Scarsella was not the "prevailing party." Scarsella also failed on eight out of nine of its claims, and Flatiron failed on both of its claims. So, the trial court correctly determined neither was the prevailing party.

### Attorney Fees and Costs at Trial

Scarsella argues the trial court should have considered whether to award fees under RCW 60.28.030, RCW 39.08.030, and Olympic S.S. Co., Inc. v. Centenniel Ins. Co.[43] Flatiron and the sureties argue this court should affirm the trial court's order denying Scarsella's request for attorney fees and costs. Flatiron also argues it is entitled to reasonable attorney fees and costs it incurred defending itself because it prevailed under RCW 39.04.250. We disagree. Neither Scarsella nor Flatiron is entitled to trial fees and costs.

"We apply a two-part standard of review to a trial court's award or denial of attorney fees: '(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion.'"[44]

First, Scarsella argues the trial court incorrectly denied recovery of attorney fees under the Prompt Payment Act, RCW 39.04.250, RCW 39.76.040, and in determining the Prompt Payment Act was an exclusive remedy.

---

[43] 117 Wn.2d 37, 811 P.2d 673 (1991).
[44] In re Washington Builders Ben. Trust, 173 Wn. App. 34, 83, 293 P.3d 1206 (2013).

RCW 39.04.250 provides, "In any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to costs of suit and reasonable attorneys' fees." RCW 39.76.040 provides, "In any action brought to collect interest due under this chapter, the prevailing party is entitled to an award of reasonable attorney fees."

Here, the trial court explained:

> It bears repeating that, although Flatiron conceded at trial that it withheld $2,731,437.97 from Scarsella as an offset against the $8,940,962 counterclaim that Flatiron was pursuing against Scarsella, Flatiron's concession does not expose Flatiron to a claim for attorneys' fees and costs or interest pursuant to RCW 39.04.250 or RCW 39.76.040, because Flatiron withheld that sum from Scarsella in good faith.

Because Scarsella was not the prevailing party, it was not entitled to recover fees under RCW 39.04.250, and RCW 39.76.040. The trial court found Flatiron withheld payment in "good faith," so Flatiron's withholding did not meet the "wrongfully withheld" requirement of RCW 39.04.250. And, because Scarsella's claim for prejudgment interest fails, it is not entitled to an award under RCW 39.76.040.

Second, Scarsella argues the trial court should have awarded it recovery against the contract retainage and attorney fees under RCW 60.28.030. In its trial complaint, Scarsella asserted a claim for "the retained percentage fund the principal amount of $6,564,370.73, plus pre-judgment interest, costs and attorney's fees, pursuant to RCW 60.28." RCW 60.28.030 provides, "In any action brought to enforce the lien, the claimant, if he or she prevails, is entitled to recover, in addition to all other costs, attorney fees in such sum as the court finds reasonable." Because the trial court

properly denied Scarsella's claim for recovery against the contract retainage, Scarsella did not prevail. So, we deny its claim for recovery under RCW 60.28.030.

Third, Scarsella argues the trial court should not have denied it attorney fees and costs under RCW 39.08.030(1)(b). RCW 39.08.030(1)(b) provides, "in any suit or action brought against such surety or sureties by any such person or corporation to recover for any of the items specified in this section, the claimant is entitled to recover in addition to all other costs, attorneys' fees in such sum as the court adjudges reasonable." "RCW 39.08.030 authorizes attorney fees in an action brought against a performance bond where the surety contests a right to recover, denies the allegations in a complaint, and seeks dismissal of an action."[45] "A surety contests a right to recover when it denies the allegations in a complaint and seeks dismissal of an action."[46] The trial court denied Scarsella's claim for attorney fees and costs under RCW 39.08.030(1)(b) because it determined Scarsella did not have a statutory basis for attorney fees and that Scarsella was not the prevailing party.

Because Scarsella's bond claim fails, its claim for attorney fees and costs under RCW 39.08.030(1)(b) also fails.

Fourth, Scarsella argues the trial court should not have denied it attorney fees and costs under Olympic Steamship because it was the prevailing party, and to obtain the benefit of the surety, it had to litigate. In Olympic Steamship, the Washington State

---

[45] Campbell Crane & Rigging Services, Inc. v. Dynamic Intern. AK, Inc., 145 Wn. App. 718, 727, 186 P.3d 1193 (2008) (citing Diamaco, Inc. v. Mettler, 135 Wn. App. 572, 578, 145 P.3d 399 (2006)).

[46] Diamaco, 135 Wn. App. at 578.

Supreme Court explained, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue."[47] "An award of attorney fees under Olympic Steamship is restricted to disputes where the insurer forces the insured to litigate coverage and then loses."[48] Because we determined Scarsella is not the prevailing party, it is not entitled to recovery under Olympic Steamship.

Fifth, Scarsella argues it is entitled to full attorney fees and costs without segregation. Flatiron asserts the trial court did not decide the issue of segregation because Scarsella's claims were unsuccessful. We review a trial court's determination of whether segregation is possible for abuse of discretion.[49] "[W]here the 'plaintiff's claims for relief. . . involve a common core of facts or [are] based on related legal theories,' a lawsuit cannot be 'viewed as a series of discrete claims' and, thus, the claims should not be segregated in determining an award of fees."[50] "A trial court need not segregate attorney fees if it determines that 'the claims are so related that no reasonable segregation can be made.'"[51] Here, Scarsella's claims relied on the same

---

[47] 117 Wn.2d, 52, 811 P.2d 673 (1991).

[48] King County v. Vinci Construction Grands Projets/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 630, 398 P.3d 1093 (2017).

[49] Vinci Construction Grands Projects, 188 Wn.2d at 632 (citing Mayer v. Sto Industries, Inc., 156 Wn.2d 677, 693, 132 P.3d 115 (2006)).

[50] Fiore v. PPG Industries, Inc., 169 Wn. App. 325, 351-52, 279 P.3d 972 (quoting Brand v. Department of Labor and Industries of State of Wash., 139 Wn.2d 659, 672-73, 989 P.2d 1111 (1999)).

[51] Everett Hangar, LLC v. Kilo 6 Owners Association, No. 76949-9-I, 7 Wn. App. 2d 1029 (unpublished).

"common core of facts." Scarsella lost its primary claims and was not entitled to fees. Because Scarsella was not entitled to fees, segregation was not appropriate.

Flatiron asserts the trial court incorrectly denied its claim for attorney fees under RCW 39.76.040 and RCW 39.04.250(3) because it prevailed against Scarsella's RCW 39.04.250 and 39.76.011 claims. Because neither party is the prevailing party, we deny Flatiron's claim.

## Prejudgment Interest

Scarsella argues the trial court abused its discretion when determining the amount awarded was unliquidated, and that the trial court should have awarded prejudgment interest totaling $949,626.03. We disagree.

We review prejudgment interest decisions for abuse of discretion.[52] A court may award prejudgment interest (1) for liquidated damages[53] or (2) "when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion."[54] "Where, however, the demand is for something which requires evidence to establish the quantity or amount of the thing furnished, or the value of the services rendered, interest will not be allowed prior to the judgment."[55]

---

[52] Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton, 158 Wn.2d 506, 519, 145 P.3d 371 (2006).
[53] Scoccolo Const., 158 Wn.2d at 519.
[54] Prier v. Refrigeration Engineering Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968).
[55] Wright v. City of Tacoma, 87 Wn. 334, 353-54, 151 P. 837 (1915).

A claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion."[56] A claim is " 'unliquidated' where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, . . . but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."[57]

In Prier, the Washington State Supreme Court explained, "the existence of a dispute over part or all of a claim does not change the claim from a liquidated to an unliquidated one. It is the character of the claim and not of the defense that determines the question."[58] There, the court determined there was data available to compute the exact costs of repairs, so the plaintiff's claims were for a liquidated sum on which interest would be allowed.[59]

Here, the trial court determined, "Scarsella's request for an award of prejudgment interest cannot be granted because Scarsella is not a prevailing party against Flatiron, and because the principal judgment amount is not based upon a liquidated sum." The trial court compared this case to Wright v. City of Tacoma where the court permitted prejudgment interest on a sum that was not in dispute but denied prejudgment interest where "the items which made up this amount were in dispute."[60] In Wright, the court explained, "It being necessary to establish by evidence the amount of the services

---

[56] Prier, 74 Wn.2d at 32.
[57] Prier, 74 Wn.2d at 33.
[58] Prier, 74 Wn.2d at 35.
[59] Prier, 74 Wn.2d at 34-35.
[60] 87 Wash. at 354.

furnished, or the quantity of material supplied, and not being able to establish these either by computation or by reference to a known standard, interest prior to the date of the judgment was improperly allowed."[61]

Here, Flatiron calculated it owed Scarsella approximately $2,731,437.97. But, the trial court determined the amount Flatiron owed Scarsella was not, and could not be, calculated "with any certainty from the evidence, and thus it is not possible to compute prejudgment interest on that sum."

We agree the amount of Scarsella's recovery is an unliquidated sum that is not "determinable by computation with reference to a fixed standard contained in the contract." For this reason, the trial court did not abuse its discretion in denying prejudgment interest.

Scarsella also argues it is entitled to prejudgment interest because RCW 39.04.250 and RCW 39.76.011 did not supersede common law rules for prejudgment.[62] "Where. . . the provisions of a later statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force, the statute will be deemed to abrogate the common law."[63]

RCW 39.04.250(3) provides a party may recover interest where a party wrongfully withheld the sum. Scarsella cannot recover under RCW 39.04.250(3)

---

[61] 87 Wash. at 354.

[62] Scarsella also argues the trial court improperly determined RCW 39.04.250 and RCW 39.76.011 to be the exclusive remedy. This claim is without merit because the trial court did not state that RCW 39.04.250 and RCW 39.76.011 were exclusive remedies.

[63] State ex rel. Madden v. Public Utility Dist. No. 1 of Douglas County., 83 Wn.2d 219, 222, 517 P.2d 585 (1973).

because Flatiron withheld payment in good faith. Because it cannot recover under RCW 39.04.250(3), Scarsella is not entitled to interest under that statute. The good faith safe harbor provided by the parties' contract and RCW 39.04.250(3)'s requirement that a withholding be wrongful abrogate any previous inconsistent common law right of recovery. And, because the date of completion had not arrived by the time of trial, the retainage issue was premature and Scarsella is not entitled to interest on the retained sum under RCW 39.76.011.

The trial court did not abuse its discretion in denying prejudgment interest. So, we affirm.

<u>Attorney Fees on Appeal</u>

Both Scarsella and Flatiron request attorney fees and costs on appeal. But, neither is the prevailing party on appeal. Each has prevailed on one or more major issues. So we deny both requests.

CONCLUSION

We affirm. The prime contract notice and claim provisions apply to Scarsella's claim for extra work because the subcontract broadly incorporated the prime contract, Flatiron did not waive the prime contract provisions, and Scarsella's claim for estoppel fails. Because Scarsella did not comply with the notice and claims requirements, it waived its right to recovery and quantum meruit is unavailable. Scarsella's claim for foreclosure of the lien on retainage was premature because the prime contract date of completion had not arrived by the time of trial. Neither Scarsella nor Flatiron is the

prevailing party, and neither party is entitled to trial fees and costs. Scarsella did not prevail on a liquidated claim, and the trial court did not abuse its discretion in denying prejudgment interest. Flatiron breached the subcontract "by causing the substantial project delays." We deny Scarsella and Flatiron's requests for attorney fees and costs on appeal.

_Leach, J._

WE CONCUR:

_Brunor, J_

_Mann, C.J._